OPINION OF THE COURT
Colleen McMahon, J.
This matter is before the court on the emergency application of petitioners for a preliminary injunction that would, in essence, compel the Landmarks Preservation Commission of the City of New York (LPC) to calendar and hold hearings on a last-minute application for landmark status for a group of buildings known as the Jones Woods Houses, located on East 65th and East 66th Streets between Lexington and Third Avenue, together with a row of 10 tenement buildings located on Third Avenue to the east of Jones Woods. Six of these 10 buildings, one of which was used for many years as the well-known “Sign of the Dove” restaurant, are slated for imminent demolition by respondent Related Companies L.P. (Related), a developer. Related intends to build an as-of-right project on the east side of Third Avenue, consisting of a 5-story base building and a 31-story tower. For the reasons stated below, the petition is dismissed.
*690 FACTUAL AND PROCEDURAL BACKGROUND
On the west side of Third Avenue, between East 65th and East 66th Streets, sits a row of 10 fpur-story tenement buildings. Designed in 1868, these buildings were customary of the housing provided for the working classes in post-Civil War New York City. Over the years, substantial changes have been made to the facades of at least the three southernmost of these buildings, including the installation of nonconforming double height windows, the addition of a large glass domed greenhouse-type structure on one of the buildings and the application of a pastel facade on the front of the best-known of the buildings — the one that for many years housed the Sign of the Dove restaurant. Indeed, one of the buildings has been altered so substantially that it is no longer as tall as the rest of the buildings, thereby breaking up the “row” effect along the avenue.
Along the side streets to the west of this row of buildings is a series of three-story brownstones known as the Jones Woods Houses. Built in the 1870’s and 1880’s, the brownstones were renovated shortly after World War I, apparently by shaving certain details off their facades and reorienting them from the street and toward their respective rear yards. The owners of the houses made a compact to preserve these rear yards as a common garden for the benefit of those living in the houses, similar to the better-known and oft-praised Turtle Bay Gardens. As a result, the Jones Woods Houses, despite their genesis as housing for New York’s lower classes, retain a certain charm that is admittedly rare in Manhattan residential housing. That charm is undoubtedly enhanced by the availability of light and air due to the low-rise structures to the east (the Third Avenue tenements) and the west (St. Vincent Ferrer Roman Catholic Church), which serve as the common garden’s “walls”.
Despite its special ambiance, the LPC has twice declined to accord landmark status to the Jones Woods Houses and their environs to the east — once explicitly and once implicitly. In 1976, the president of the Jones Woods Houses sought landmark designation for the buildings and the rear-yard common garden. One year later, after what LPC described as “careful appraisal of the houses which you nominated,” LPC refused *691 even to consider landmarking the Jones Woods Houses.* (Gruzen affidavit paras 10-13; exhibit E.)
Six years later, LPC designated a substantial area neighboring the Jones Woods Houses as the Upper East Side Historic District. The Jones Woods Houses and the common gardens were not included in that District, which is not surprising, since the purpose of creating the District was to preserve the aesthetic qualities of an area, “Developed in the late 19th and early 20th Centuries to serve the needs and tastes of New York’s upper classes” (Gruzen affidavit, exhibit G, at 13). The Jones Woods Houses and the tenements to their east, which petitioners’ expert contends are “symbols of the development of this area for middle and working class families” (Whitaker affidavit para 4), would appear not to qualify for inclusion in a historic district consisting of homes for the upper classes.
The New York City Zoning Resolution, passed by the City Council following an extensive legislative process, governs the density permitted along Third Avenue between 65th and 66th Streets. That block-front is designated a Cl-9 zoning district, which means that high density structures may be built of right at that point along Third Avenue, even though it is quite obvious that buildings of the permitted size would cast shadows on the common garden behind the Jones Woods Houses. Indeed, it appears that there is a 17-story tower on the southeast corner of East 65th Street and Third Avenue, which already impacts the amount of sunlight reaching the garden.
In October 1997, Related acquired the six southernmost of the 10 tenements along the western side of Third Avenue between 65th and 66th Streets, including the former Sign of the Dove facility. It proposes to develop the property by erecting a 31-story luxury condominium tower with a 5-story base building along the Third Avenue street front. Pursuant to the Zoning Resolution, Related can build this project of right, regardless of its impact on adjacent properties. However, Related has gone out of its way to try to “sell” the project to the surrounding community. Indeed, after meeting with the owners of the adjacent Jones Woods Houses, Related voluntarily redesigned the building, to reduce the size of the base building that will serve as the garden “wall” (it was originally slated to be eight stories), and to decrease the impact of both the base building and the tower on the rear-yard gardens.
*692 On December 28, 1997, the New York Times published a lengthy article about the Jones Woods Houses by noted architectural historian and preservationist Christopher Gray. The article mentioned Related’s plans and noted that residents of the Jones Woods Houses were concerned. The matter was scheduled for presentation to the local Community Board on February 23, 1998.
Predictably, petitioners waited until February 13, 1998 to ask that LPC once again consider landmarking the Jones Woods Houses and adding the rest of the block to that request, or, in the alternative, including the Jones Woods Houses, the common garden and the tenements along Third Avenue in the Upper East Side Historic District. The request for evaluation was cursory. It consisted of a less than two-page, typewritten, highly informal assessment of the importance of the block, with no supporting documentation. The request failed to disclose that LPC had already declined to consider landmarking the Jones Woods Houses and had not included the block (either Jones Woods or the tenements) in the Upper East Side Historic District. After speaking with the general counsel of LPC on February 26, the Corporation Counsel was unable to tell the court when LPC might act on this request. The court was informed that, fearing a last-second application to derail the project, Related had previously taken the step of inviting the Landmarks Commissioner, Jennifer Raab, and members of her staff to visit the site. That visit had occurred prior to February 26.
On February 26, after the scaffolding for demolition had been erected, petitioners came before this court seeking a temporary restraining order and injunctive relief. The parameters of its request were highly unusual. Petitioners asked the court to compel LPC to act on its request for consideration of landmark status for the Jones Woods Houses and the 10 tenements along the west side of Third Avenue, and also to enjoin the City Department of Buildings (DOB) from granting a demolition permit for the project. Petitioners did not seek any temporary injunctive relief directly against Related.
The court was highly skeptical about whether the petition stated any cause of action. The court specifically noted, in colloquy with counsel, that it could not enjoin DOB from performing a duty mandated by law, namely, issuing a permit for a project within 40 days after receiving a valid application for same. (Administrative Code of City of NY § 27-191.) The court also expressed considerable doubt whether it could mandatorily enjoin LPC to take the sort of action petitioners sought.
*693 The court orally agreed to a temporary restraining order (TRO) that would bar Related from commencing demolition, but only on the condition that petitioners post bond in the amount of $15,000 per day for the duration of the TRO. The amount chosen was the out-of-pocket interest cost to Related on the interim recourse loan it had obtained to finance the demolition phase of the project. This colloquy was not translated correctly on the order to show cause, which on its face enjoins DOB, the very party the court had no power to enjoin. This was entirely the court’s fault, for which I apologize. In any event, the written TRO against DOB was of no legal effect (CPLR 6313 [a]), and the orally authorized TRO against Related was never properly bonded. At most, it was in effect for three days between March 2, when petitioners posted a $45,000 bond, and March 5, when the period covered by any $45,000 bond automatically expired. To my knowledge, no further monies were posted.
At the time counsel first appeared in this Part, the court indicated it wanted to dispose of this matter within a very short period, and set a schedule for responsive papers that would have had the matter submitted within a week. On March 2, petitioners served an amended notice of petition and petition, so I granted a one-week adjournment.
In reviewing the reply papers submitted on the afternoon before the return date, the court learned that the Designation Committee of LPC intended to take up the matter of the Jones Woods Houses at its next scheduled meeting on March 17. I therefore adjourned the matter to March 18. In order to preserve the integrity of the buildings until the Designation Committee could act, the court temporarily enjoined the Related Companies from, as I put it, “swinging the wrecking ball.” Related was free to take all other actions in furtherance of its project, including without limitation obtaining necessary permits. The court clarified the record by indicating that no injunction purported to be entered against DOB.
Late in the afternoon of March 17, 1998, I received from the Corporation Counsel an affirmation from Mark Silberman, Director of Enforcement for LPC. Mr. Silberman advised me that the Designation Committee, consisting of Commissioner Raab and four members of the LPC, including the Commission’s architectural historian, had met to consider the request for evaluation. At that meeting, the Committee reviewed and evaluated the information submitted with the request, looked at slides of the property and discussed the significance of the *694 properties in terms of the criteria for designation as its own potential historic district or as an extension to the existing Upper East Side Historic District. Following that discussion, the Committee declined to recommend that the full LPC consider the properties for a calendaring vote. This decision effectively ends the interest of LPC in the properties sought to be land-marked by petitioner.
When counsel appeared on March 18, petitioner announced that, as LPC had accorded it the consideration sought in the original application, he would deem the pending petition withdrawn as moot, and would consult with his clients about their interest in bringing a new petition under CPLR article 78 to challenge the determination of the Designation Committee. The Corporation Counsel and counsel for Related opposed the application to withdraw the petition, indicating that they did not deem the matter to be entirely moot, even in light of the Designation Committee’s decision. They asked that the court decide the matter. Since several of the claims are clearly not mooted by the Designation Committee’s determination, I am issuing this opinion.
CONCLUSIONS OF LAW
In order to obtain a preliminary injunction, the moving party must demonstrate, through clear and convincing evidence, that (1) the movant will succeed on the merits of the action; (2) the movant will suffer irreparable harm absent the issuance of a preliminary injunction; and (3) the balance of equities lies in favor of the movant. (Aetna Ins. Co. v Capasso, 75 NY2d 860 [1990].) So drastic a remedy is not to be granted unless the moving papers establish a clear and undisputed right to relief. (Park Terrace Caterers v McDonough, 9 AD2d 113, 114 [1st Dept 1959].) Petitioners have not met their heavy burden.
As the court intuited when counsel first appeared in my Part, I have no power to compel LPC to entertain the application for landmark status for the Jones Woods Houses and the tenements. Thus, both petitioners’ original application to compel a decision whether or not to calendar (which is now moot) and the purely discretionary decision of the Designation Committee not to refer the matter to the full Commission (which is implicated by at least the fifth cause of action of the amended petition and perhaps others as well) are insulated from judicial review. Mandamus, the remedy petitioners seek, does not lie to compel performance of any act that involves the exercise of judgment or discretion, or to compel an officer to *695 perform any statutory duty in a particular manner. (Matter of Mennela v Lopez-Torres, 229 AD2d 153, 155 [2d Dept 1997], citing Klostermann v Cuomo, 61 NY2d 525, 539 [1984]; Saslow v Cephas, 198 AD2d 53 [1st Dept 1993].) No provision of the Administrative Code requires LPC to consider any request for landmark status that is submitted to it. To the contrary, LPC has unfettered discretion to decide whether to calendar an item to be considered for landmark designation. Section 1-02 of title 63 of the Rules of the City of New York, adopted pursuant to Administrative Code § 25-319, provides that the Landmarks Preservation Commission may, upon the adoption of a motion, calendar an item to be considered for landmark designation. The use of the word “may” in the regulation vests the agency with discretion over all acts taken or made pursuant to that provision. (Matter of Savastano v Prevost, 66 NY2d 47, 50 [1985]; Donaldson v State of New York, 156 AD2d 290, 292 [1st Dept 1989].) That LPC must apply stated statutory criteria in deciding whether a calendared building ought to be a landmark does not mean that it must go through the lengthy formal consideration process with respect to every single application that is submitted to it. Indeed, petitioners admit as much. Therefore, as a matter of law, petitioners’ first cause of action does not state any claim for relief on which petitioners are likely to prevail; in fact, it does not state any cognizable claim at all. Further, to the extent it sought simply some consideration of their request for evaluation, it is also moot.
The same is true of petitioners’ second cause of action, which seeks notice and an opportunity to be heard before LPC makes its decision whether or not to consider the request for evaluation. Petitioners claim that for LPC to do otherwise would deny them procedural due process. But petitioners have no constitutional right to any form of due process, either substantive or procedural, in this matter. It is well settled that one cannot have a property interest that is protected by due process if the matter that gives rise to that interest is discretionary. (Matter of Doe v Coughlin, 71 NY2d 48, 55 [1987], cert denied 488 US 879 [1988]; Matter of Daxor Corp. v State of N. Y. Dept. of Health, 90 NY2d 89 [1997].) In Morillo v City of New York (178 AD2d 7, 13 [1st Dept 1992]), a City agency adopted guidelines for use by its own staif in making discretionary decisions concerning which unauthorized occupants of City-owned in rem buildings would be given leases on new City-owned apartments. Five such occupants brought suit alleging that these rules violated their due process and equal protection rights. *696 The Court held that no constitutionally protected property right was created by the adoption of those rules for obtaining new apartments, because “ ‘[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim’ ” (at 13). Since the occupants could not claim that they were entitled to get apartments, they had no protectable property interest. (See also, Gagliardi v Village of Pawling, 18 F3d 188, 191-192 [2d Cir 1994].)
Where entitlement to a benefit (in this case, calendaring of the request for evaluation for formal hearings, which is what petitioners want) is subject to agency discretion, a party’s expectations can only rise to a protected property interest where the agency’s discretion is so narrowly circumscribed as to virtually assure conferral of the benefit. (See, Matter of Daxor Corp. v State of N. Y. Dept. of Health, supra, 90 NY2d, at 89; Gagliardi v Village of Pawling, supra, 18 F3d, at 188, 192 [2d Cir 1994].) As the residents of Jones Woods Houses should be well aware from the fate of their first application for landmark status, which LPC refused to consider, nothing in the law “virtually assures” that they will get the matter on the Commission’s calendar. And since petitioners have no protected property interest in obtaining landmark status, or even in obtaining formal Commission consideration of their application, they have no right to procedural due process. (Gagliardi v Village of Pawling, supra, 18 F3d, at 193.) Therefore the second cause of action, like the first, must be dismissed, even though LPC does not intend to give the matter any formal consideration.
In any event, petitioners can no longer claim that LPC denied them a hearing. Indeed, counsel for petitioners, in an appearance before the court this morning, admitted that LPC, by referring the matter to the Designation Committee, had given petitioners everything they sought in their petition, and indicated that this claim was now moot.
In the third cause of action, petitioners seek to enjoin DOB from complying with its statutorily mandated duty to issue a demolition permit within 40 days after Related files a facially valid application. This claim is not moot, but it is wholly without merit. No injunction lies under CPLR article 78 to prevent an agency from performing any duty imposed on it by law. (CPLR 7803.) Moreover, petitioners’ contention that DOB should refrain from acting so that the “public” can review the request for evaluation is nothing more than a request for *697 additional time to mount a public relations campaign and drum up opposition to the project. But Related’s proposed building conforms to the existing Zoning Resolution. It may therefore be built of right, no matter how many people are opposed to it. Thus, no cognizable claim is stated on this ground, either, and the third cause of action falls as well.
Petitioners amended their petition to assert three new claims for relief. Respondent Related aptly summarized those claims when it observed that these new claims (for which no specific relief is prayed) “are nothing more than an attempt to mask the failings of the Verified Petition by invoking the familiar words and phrases of Article 78 — arbitrary and capricious and abuse of discretion.” (Respondent’s mem of law, at 35-36.)
For the reasons given for dismissing the first cause of action, the fourth cause of action — which alleges that LPC’s failure to consider the request for evaluation is arbitrary and capricious — is also dismissed. If LPC has complete discretion to calendar a request or to deny an application for calendaring, it stands to reason that there is nothing arbitrary or capricious about not calendaring it. If the gravamen of the fourth cause of action is that LPC could not refuse to consider whether to put the matter on the calendar, or could not put off such consideration indefinitely, the fact that the Designation Committee has acted moots the claim.
The fifth cause of action is likewise dismissed. The essence of this claim is that this court should compel LPC “to set forth an administrative record upon which petitioners can pursue further administrative or judicial remedies,” because its failure to do so is somehow arbitrary or capricious. A similarly nonsensical contention was put to rest by the First Department in Saslow v Cephas (supra, 198 AD2d, at 54), where the Court held that the “admitted failure [of the agency] to convene any meetings regarding interest rates * * * was neither arbitrary and capricious nor an abuse of discretion, since, as noted, there was no statutory duty imposed * * * to so act.” Therefore, even if the Designation Committee had not considered the request for evaluation submitted by petitioners, there would have been no basis to grant the petition.
Petitioners in essence allege that LPC is required to publish proceedings or some other record that they can pick apart in a search for arbitrary or capricious actions. However, because LPC has complete discretion over whether to afford formal consideration to (i.e., calendar) any item, let alone over the decision whether a calendared item ultimately gets *698 landmark status, there is simply no reason, in law or logic, to require that it create a full administrative record. Here, in any event, the Commission convened a meeting of the Designation Committee, and the Silberman affirmation reveals that the Designation Committee declined to act “on the basis that the properties lack sufficient architectural, historical, or cultural significance to merit further consideration as a New York City historic district or as an extension of the existing Upper East Side Historic District.” (Silberman affirmation para 6.) Thus, LPC through the action of the Designation Committee, has set forth the reasons for its decision, which appears to moot the fifth claim. Those reasons should come as no surprise, since LPC came to the same conclusion on two earlier occasions.
Finally, the sixth cause of action asserts that LPC has acted arbitrarily and capriciously because it has given other requests for evaluation a degree of consideration that it has not afforded to petitioners’ request. This claim not only fails to state a claim for relief for the same reasons as the second cause of action, but is also belied by the record, which demonstrated that LPC gave “careful appraisal” to both the current request for evaluation and previous opportunities to landmark the Jones Woods Houses — and refused to go forward in every case.
The long and short of it is that petitioners have failed to convince this court that they have a clear right to relief, so as to warrant entry of a preliminary injunction. But it is obvious that they have no right to relief under any of their vaguely pleaded “causes of action”. This necessitates dismissal of the petition on the merits, without regard to its alleged mootness. To the extent that the claims are moot by virtue of the action of the Designation Committee, it must also be dismissed.
The court having ruled on the aforementioned grounds, it is not necessary to reach any of Related’s other arguments. However, I must observé two other deficiencies in petitioners’ proof.
First, petitioners cannot seriously contend that they are likely to succeed on the merits when the LPC has already had two separate opportunities to landmark the Jones Woods Houses, including one to include the tenements within the confines of the Upper East Side Historic District. It has consistently refused to do so. Petitioners’ failure to inform the court of these prior actions by LPC is inexcusable.
Second, petitioners have also failed to convince this court that the balance of equities tips in their favor. Related has acquired these properties at great cost in a hot real estate mar *699 ket. It has invested substantial time and energy, not to mention money, to design a project that can be built of right under the City’s Zoning Resolution. It has obtained interim financing, but only on a recourse basis (i.e., with the principals personally responsible to repay the loan). This financing is of limited duration; it expires next October. The interim interest commitments are staggering — $15,000 per day. Related’s commitment for permanent financing will be honored only if the site is completely demolished and all necessary DOB approvals for construction are obtained within the next six months. Demolition will take four of those six months.
The partners of Related stand to lose a great deal of money if an injunction issues, but more than that, they stand to lose their window of opportunity to build this project. The right to develop this quality site is unique and irreplaceable. Petitioners do not appear to be in a financial position to post a bond sufficient to cover Related’s potential losses — and loss of the project altogether constitutes an irreparable injury.
Petitioners, by contrast, do not stand to suffer any irreparable injury. They are not going to lose their homes, which (contrary to the implications of the verified petition) are not slated for demolition. They do stand to lose some sunlight, together with the charm that sunlight undoubtedly brings to their cozy private enclave. But they have no continuing right to those charms.
The necessary import of the New York City carefully crafted Zoning Resolution is that residents of East 65th and East 66th Streets may lose the amount of sunlight they have heretofore enjoyed. LPC has no statutory authority to ensure that the Jones Woods Houses and the adjoining gardens remain perpetually bright, and it would be a misuse of its powers for LPC to regulate the height of the buildings along the western side of Third Avenue — the fourth “wall” for the garden area enjoyed by the residents of the block (but invisible to the public) by landmarking the existing tenements — in order to bring about that result. The LPC exists to preserve great works of architecture, not to preserve what petitioners’ expert, Mr. Whitaker, describes as “the ambiance and special character” of the architecturally undistinguished Jones Woods Houses. The proper time for the residents of the Jones Woods Houses to raise this issue was when the Zoning Resolution was enacted, and the proper forum was the City Council, not the LPC.
The request for preliminary injunctive relief is denied in all respects and the petition is dismissed for failure to state a *700 claim on which relief can be granted. (CPLR 3211 [a] [7].) The limited TRO against the Related Companies with respect to the actual act of demolition is vacated effective immediately.

 Interestingly, LPC had already landmarked St. Vincent Ferrer Roman Catholic Church, an extraordinary Bertram Goodhue church to the west of the site which has great architectural value.