Matter of Landmark West! v Burden (2004 NY Slip Op 50331(U))

[*1]

Matter of Landmark West! v Burden

2004 NY Slip Op 50331(U)

Decided on April 15, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 15, 2004

Supreme Court, New York County
In the Matter of LANDMARK WEST!; ARLENE SIMON, individually and in her capacity as President of LANDMARK WEST!; the HISTORIC DISTRICTS COUNCIL; DOCOMOMO US/New York Tri-State; CHRISTOPHER LONDON; SUE MELLINS; SOPHIA DEBOER and JULIET HARTFORD, Petitioners, 
against
AMANDA M. BURDEN, as Chair of the New York City Planning Commission; the New York City Planning Commission; ROBERT R. KULIKOWSKI, Assistant to the Mayor for the Deputy Mayor for Economic Development and Rebuilding; ANDREW ALPER, President of the New York City Economic Development Corporation; MARTHA K. HIRST, Commissioner of the New York City Department of Citywide Administrative Services; the MUSEUM OF ARTS AND DESIGN; and HOLLY HOTCHNER, Director of the Museum of Arts and Design, Respondents.
Index No. 119036/03

URBAN ENVIRONMENTAL LAW CENTER, 475 Park Avenue South, 16th Floor, New York, NY 10016, Attorneys for the Petitioner, By: Antonia Bryson, Esq.
MICHAEL A. CARDOZO, CORPORATION COUNSEL OF THE CITY OF NEW YORK, 100 Church Street, New York, New York 10007, Attorneys for the City Respondents, By: Christopher Reo, Esq. Senior Counsel, Michael Burger, Esq. Assistant Corporation Counsel
STROOCK & STROOCK & LAVAN LLP, 180 Maiden Lane, New York, NY 10038, Attorneys for the Museum of Arts and Design, By: Regan A. Shulman, Esq., Ross Moskowitz, Esq.

WALTER B. TOLUB, J.
Two Columbus Circle, known to many of us as the old Huntington Hartford Museum, has in its brief history not been a stranger to controversy. Its detractors have characterized it as "the lollipop building", an oddity of dubious architectural distinction and "Stone's Moorish Tomb". Its defenders claim it is visually striking, architecturally significant, and in the words of one supporter, one of a class of "buildings that express political Zeitgeist", (Reply, Ex 4) "remnants of the ideas that shaped their age" (ibid.).
Petitioners seek, by this proceeding, to halt the sale of the building from the City of New York to the Museum of Arts and Design, which plans to refurbish and renovate the building. According to petitioners, an environmental assessment of the sale's impact on the area's historic resources incorrectly concluded that the building itself was not an historic resource, and that the determination was arbitrary, capricious, and in violation of applicable law.
Architectural History
Commissioned by A&P Supermarket heir Huntington Hartford in 1955, Two Columbus Circle ("Two Columbus Circle" or "the building") was originally envisioned to be a monumental structure, a major cultural institution and an anti-modernist gallery. Edward Durrell Stone, considered one of America's most important and admired architects of the post-World War II era, designed the building in 1964.
[*2]
The building's form is based on Stone's design of the US Embassy in New Delhi, India. The nine-story building is a poured concrete structure sheathed in white, gray-veined Vermont marble. An open concrete Venetian-inspired arcade with lollipop-like columns inlaid with circular panels of red granite supports the building's base.
The building's almost windowless facade has distinctive Moorish filigreed masonry details, including small porthole-like windows that line the building's outer edges from the second to the ninth floors and crown the ninth story in a wide horizontal band. A few small porthole windows also cover the central portion of the building's south facade and border the top of the building's ground floor arcade. A second open Venetian-styled arcade or loggia encircles the building at its eighth and ninth stories. At the top sits a small windowless one-story mechanical penthouse set back from the building's edges.
Because it sits on an irregularly shaped lot, no two dimensions of the building's structure are the same. The building's north facade is a concave wall that conforms with the curve of Columbus Circle.
For years, individuals and organizations have unsuccessfully sought landmark designation for Two Columbus Circle from the New York City Landmarks Preservation Commission (LPC). In 1996, the Research Department and Designation Committee of the LPC declined to recommend the building to the full Commission for consideration.
By a letter dated June 5, 2000, preservation groups urged the Commissioner of the New York State Office of Parks Recreation, and Historic Places (OPRHP) to place the building on the State and National Registers of Historic Places. Nothing in the record before this court indicates that the Commissioner responded to this letter, and the court regards this as a declination.
On June 14, 2002, the New York City Economic Development Corporation (EDC) "conditionally designated" a proposal for the sale and redevelopment of the building at Two Columbus Circle submitted by the Museum of Arts and Design. The museum plans to replace the building's existing exterior cladding with a panel system complimentary and consistent with the existing buildings along Central Park. New windows would be added to the building's facades, the building's open ground floor arcade will be enclosed with glass walls, and the ground floor will be extended to the building's footprint edge to create a lobby/reception area and museum store.
Procedure
The proposed disposition of City-owned property triggered New York City's Uniform Land Use Review Procedure (ULURP), which requires a determination of environmental impact under City Environmental Quality Review (CEQR) rules (62 RCNY § 5-01 et seq.). On August 30, 2002, the Office of the Deputy Mayor for Economic Development and Rebuilding (Deputy Mayor's Office) assumed "lead agency" status to determine the environmental impact under CEQR. An environmental consultant prepared an extensive draft and final version of an Environmental Assessment Statement (EAS) for the Two Columbus Circle Project. On March 26, 2003, Robert Kulikowski, on behalf of the Deputy Mayor's Office, issued a negative declaration, declaring that the proposed sale of the building would not have a significant adverse impact on the environment. The finding was based on a review of the information contained in the final EAS.
During this time, preservation groups again urged the Commissioner of the New York State OPRHP to list the building as an historic place. However, by a letter dated January 6, 2003, the commissioner stated,
"Since we have not been informed of any state or federal involvement in the rehabilitation [of the building], we prefer not to issue a formal determination of eligibility at this time, but rather to try to affect a satisfactory outcome by working with new owners in a positive manner. Should there be state or federal involvement at a future date, we will proceed with eligibility determination as required by Section 14.09 of the State Historic Preservation Act and/or Section 106 of the National Historic Preservation Act." (Petitioners' Ex 13)
Meanwhile, the Department of Citywide Administration Services (DCAS) had filed a ULURP application for the Two Columbus Circle Project, and the ULURP application was referred [*3]to Community Board 5 and the Manhattan Borough President, C. Virginia Fields, for consideration. After a public hearing on May 8, 2003, Community Board 5 voted to recommend that the City Planning Commission (CPC) approve the building's sale to the museum. On May 27, 2003, the Borough President also recommended approval. The CPC held a public hearing on the ULURP application on June 18, 2003, and it issued and adopted a resolution approving the sale on July 2, 2003.
On November 3, 2003, petitioners, individuals and organizations dedicated to historic preservation, brought this Article 78 proceeding challenging the negative declaration issued by the Deputy Mayor's Office. Petitioners argue that the Deputy Mayor's Office did not comply with the State Environmental Quality Review Act (SEQRA) (Environmental Conservation Law § 8-101 et seq.) and the City Environmental Quality Review (CEQR) rules (62 RCNY § 5-01 et seq.). Petitioners hold a deep conviction that the building has not had its "day in court" and has not received fair treatment from the Landmarks Preservation Committee.
More specifically, petitioners claim that the Environmental Assessment and negative declaration issued by the Deputy Mayor's office failed to properly analyze whether the museum's plans for renovating the building has the potential to significantly affect an "important historical and architectural source" (Petition at ¶51), and that a proper analysis would have resulted in a contrary finding triggering a full Environmental Impact Statement which would have in turn impacted negatively on the project as part of the ULURP process.
The respondents claim that they have complied with applicable law and further claim that the petitioners lack standing to bring this lawsuit.
Discussion
At the outset, it is important to note that it is not the role of the courts to sit as arbiters of art or architecture or to judge what is or is not of architectural or historical significance. Our role in these matters is limited to an inquiry as to whether the respondents' determination was made in violation of lawful procedure, was adduced by an error or law, was arbitrary or capricious, or was an abuse of discretion (Matter of Gernatt Asphalt Products, Inc. v Town of Sardinia, 87 NY2d 668 [1996]).

SEQRA and its regulations establish "'an elaborate procedural framework' governing the evaluation of the environmental ramifications of a project or action" (Matter of New York City Coalition to End Lead Poisoning, Inc. v Vallone, 100 NY2d 337, 347 [2003][citation omitted]). "CEQR, which implements SEQRA in the City of New York, requires City agencies to assess the environmental consequences of their decisions to fund, approve or directly undertake an action" (Matter of 27th St. Block Assn. v Dormitory Auth. of the State of N.Y. , 302 AD2d 155, 157 [1st Dept 2002]).

 Standing

As a threshold matter, the City respondents [FN1] challenge petitioners' standing to bring this lawsuit. To confer standing, there must be a determination that the challenged action would cause the petitioner or petitioners direct harm. As the court in Gallahan v Planning Board of the City of Ithaca, 307 AD2d 684,685 [3rd Dept 2003]) explained:
While standing principles are broadly construed in matters involving zoning and land use development (see Matter of Sun-Brite Car Wash v. Board of Zoning & Appeals of Town of N. Hempstead, 69 N.Y.2d 406, 414, 515 N.Y.S.2d 418, 508 N.E.2d 130 [1987]), it nevertheless remains incumbent upon the party challenging such an administrative determination to "show that it would [*4]suffer direct harm, injury that is in some way different from that of the public at large" (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 774, 570 NYS2d 778, 573 NE2d 1034 [1991]; see Matter of O'Donnell v Town of Schoharie, 291 AD2d 739, 740, 738 NYS2d 459 [2002]; Matter of Oates v Village of Watkins Glen, 290 AD2d 758, 760, 736 NYS2d 478 [2002]).
Under the prevailing case law, established environmental organizations lack standing unless they demonstrate that one or more of the organization's members would have standing to sue(see, Matter of Long Island Pine Barrens Society, Inc. v Planning Board of the Town of Brookhaven, 213 AD2d 484 [2nd Dept 1995]; Long Island Pine Barrens Society, Inc. v Town Board of East Hampton, 293 AD2d 616 [2nd Dept 2002]). Similarly, persons whose premises are neither proximate to or do not hold a line of sight with the proposed project also lack standing (Matter of Save Our Main Street Bldg. v Green County Legislature, 293 AD2d 907 [3rd Dept 2002]).
However, a party who alleges an adverse impact on a scenic view from his or her residence has standing to raise a SEQRA challenge (Matter of Save Our Main Street Bldg., 293 AD2d 907, 908-909). "[A]esthetic or quality of life type of injuries have consistently been recognized by the courts as a basis for standing" (Matter of Committee to Preserve Brighton Beach & Manhattan Beach v Planning Commission of the City of New York, 259 AD2d 26, 32 [1st Dept 1999]).
Of all the petitioners in the within application, the court finds that petitioner Sophia deBoer has standing to maintain this action. A twenty-four year resident of the building immediately north of Two Columbus Circle, Ms. deBoer has a view of the building from her apartment window (Petition ¶ 17; deBoer Reply Aff. ¶ 2) and claims that the building is a vital presence in her daily life, and that the loss of the building would impact her sense of place and neighborhood identity (Petition ¶ 17; deBoer Reply Aff. ¶ 4).
Given Ms. deBoer's appreciation of the building, her direct view, and her close proximity to it for a number of years, this court is satisfied that the changes in the building's facade would affect Ms. deBoer in a manner wholly distinct from the public at large.
Inasmuch as Ms. deBoer has standing to sue and as she joins in the collective arguments of the petitioners, this action may be maintained.
Petitioners' Claims Petitioners claim that the determination made by the City was flawed in that: (1) the City Planning Commission ("CPC") should have been the lead agency in assessing the project's environmental impact; and (2) the City did not identify the areas of environmental concern, did not take a "hard look" at them, and did not present a "reasoned elaboration" for the basis for its determination.
Petitioners contend that the CPC should have been the lead agency in studying the sale's environmental impact, rather than the Deputy Mayor's Office. However, this argument is without merit. Under CEQR, determination of the lead agency within the context of ULURP is based on the status of the ULURP applicant (62 RCNY § 5-03 [b]). Here, DCAS submitted the ULURP application. Because the applicant is a city agency, and multiple agencies are involved, the agencies were entitled to agree among themselves who would be the lead agency (62 RCNY § 5-03 [b] [4], [h]). In this case, it is the general practice of the Deputy Mayor's Office to assume lead agency status when the City proposes to transfer property to the Economic Development Corporation for sale to another party (Kulikowski Aff. ¶ 5).
The bulk of petitioners' arguments focus on the negative declaration. "Judicial review of a lead agency's negative declaration is restricted to 'whether the agency identified the relevant areas of environmental concern, took a 'hard look' at them, and made a 'reasoned elaboration' of the basis for its determination'" (Matter of New York City Coalition to End Lead Poisoning, 100 NY2d at 348 [citing Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417 [1986][FN2]. "[W]hile [*5]judicial review must be meaningful, the courts may not substitute their judgment for that of the agency for it is not their role to weigh the desirability of any action or [to] choose among alternatives" (Matter of Merson v McNally, 90 NY2d 742, 752 [1997][citations and internal quotation marks omitted]).
"Hard Look"
Petitioners argue that the Deputy Mayor's Office did not take a "hard look" at the project's impact on historical resources, in that the final EAS incorrectly concluded that the building was neither eligible as a City landmark nor eligible for listing on the State and/or National Registers of Historic Places. In any event, petitioners argue that the appropriate criterion for assessing impact was whether the building was an "important" historic resource.

The City Respondents contend that the EAS provided a comprehensive historic resources analysis, and directly addressed the building's potential as an architectural resource, in accordance with the guidance in the CEQR Technical Manual. The City Respondents further contend that petitioners fail to point to any aspect of the project that was not considered in the final EAS.
Compiled by the Mayor's Office of Environmental Coordination, with the assistance of the city's technical agencies, the CEQR Technical Manual "is intended to provide guidance for city agencies, project sponsors, and the public in the procedures and substance of the CEQR process" (see Petition, Ex 7 [CEQR Technical Manual] at I). For actions that may affect "historic resources," the CEQR Technical Manual advises that a lead agency must first 1) consider the area that the action might affect; 2) identify known "historic resources" in the area; and 3) investigate unknown resources on the site.
The CEQR Technical Manual defines the term "historic resources" to include:
Designated New York City Landmarks, Interior Landmarks, Scenic Landmarks, and properties within designated New York City Historic Districts;
Properties calendared for consideration as one of the above by the New York City Landmarks Preservation Commission (LPC);
Properties listed on or formally determined eligible for inclusion on the State and/or National Register of Historic Places, or contained within a district listed on or formally determined eligible for the State and/or National Register of Historic Places
Properties recommended by the New York State Board for listing on the State and/or National Registers of Historic Places;
National Historic Landmarks;
Properties not identified by one of the programs listed above, but that meet their eligibility requirements
(CEQR Technical Manual § 110). "Historic resources" include "architectural resources," such as "historically important buildings, structures, objects, sites, and districts" (ibid.).
The record shows that the Deputy Mayor's Office followed the methodology set forth in the CEQR Technical Manual. It verified whether the building was a known historic resource, and investigated whether the building is an unknown historic or architectural resource. The EAS contains a detailed discussion of significant persons associated with the building, of the building's exterior and interior design, its workmanship, its architectural relevance, and other historic connotations of the building (see City Respondents' Ex D at C-4 through C-6). As mentioned in the CEQR Technical Manual, this is the kind of information required by criteria that the United States Secretary of the Interior established in evaluating whether Two Columbus Circle would be eligible for listing on the National Register of Historic Places (CEQR Technical Manual at 3F-2 through 3F-5). The Deputy Mayor's Office also consulted with the LPC, and forwarded a draft EAS to the [*6]LPC in January 2003 (Kulikowski Aff. ¶ 9).
Notwithstanding the above, petitioners argue that the process was flawed because the EAS inaccurately states that the building is not eligible to be a landmark or to be listed as an historic place. Among the many statements in support of the building, petitioners submit an affidavit from the dean of Yale's School of Architecture, who states that, "if any building meets the criteria for designation as a New York City landmark * * * this one does" (Stern Aff. ¶ 4). Petitioners also maintain that the letter dated January 6, 2003 from the Commissioner of the OPRHP was a decision to "defer," rather than deny, eligibility for listing as an historic place.
Erroneous information contained in an environmental assessment is some evidence that an agency did not take a "hard look" (see Matter of LaDelfa v Village of Mt. Morris, 213 AD2d 1024 [4th Dept 1995]; Matter of Tehan v Scrivani, 97 AD2d 769 [2d Dept 1983]). The erroneous information would show that the agency had not verified whether the information upon which it relied was factually accurate (Matter of Coalition for Future Stony Brook Village v Reilly, 299 AD2d 481 [2d Dept 2002][negative declaration referred to a defunct project]).
However, under these circumstances, eligibility is really a term of art and not an objectively provable fact; it is a matter of judgment. An individual property less than 50 years old may be considered eligible for nomination as an historic place on the State or National Register of Historic Places if it is "of exceptional importance" (36 CFR 60.4; 9 NYCRR 427.3 [b] [7]). For a New York City landmark, the property must have a "special character or special historical or aesthetic interest or value as part of the development, heritage, or cultural characteristics of the city, state or nation" (Administrative Code of the City of NY § 25-302). In deciding whether the EAS accurately stated the building's "eligibility," the court would necessarily be impermissibly substituting its own judgment for that of the Deputy Mayor's Office, the Landmarks Preservation Commission, and the New York State Office of Parks, Recreation, and Historic Places. Therefore, this is a situation where "[t]he fact that plaintiffs disagree with the conclusion reached, does not prove that defendants did not take a 'hard look'" (Akpan v Koch, 152 AD2d 113, 119 [1st Dept 1989], affd 75 NY2d 561 [1990]; see also Matter of Save Easton Envt. v Marsh , 234 AD2d 616, 618 [3d Dept 1996]["The mere fact that petitioners' concerns regarding certain aspects of the project were not resolved in their favor does not mean that DEC failed to discharge its statutory obligations under SEQRA"].[FN3]
Had the Commissioner of the OPRHP been in the process of formally determining the building's eligibility for listing as an historic place, this court might have second thoughts as to whether the Deputy Mayor's Office took a "hard look." The EAS does not state whether the agency consulted with OPRHP in arriving at its conclusion that the building was not eligible for listing as an historic place. Nevertheless, the letter of Commissioner Castro clearly indicates that no eligibility determination was pending (see Petitioners' Ex 13). Therefore, the letter does not raise an issue as to whether the EAS accurately stated the building's eligibility for listing as an historic place.
[*7]
Next, petitioners argue that the EAS should have looked beyond the building's ineligibility as a landmark or an historic place. Petitioners point out that, in the section on identifying potential architectural resources, the CEQR Technical Manual states, "[t]he passage of time or changing perceptions may justify reevaluation of properties that were previously determined ineligible for the Register or for designation as City Landmarks or Historic Districts" (CEQR Technical Manual at 3F-11). Petitioners also contend that the Deputy Mayor's Office should have considered if the building was "important," because CEQR's and SEQRA's criteria for assessing environmental impact speak in terms of "important historical resources" (see 62 RCNY § 6-06 [a] [5]; 6 NYCRR 617.7 [c] [1] [v]).[FN4]
These arguments are equally unavailing. Petitioners have taken the guidance of the CEQR Technical Manual out of context. Of course, it does advise that a previous determination of ineligibility of a property as a landmark or as an historic place does not automatically lead to the conclusion that the property should not be identified as a potential architectural resource. However, it is incorrect to conclude that "the passage of time" or "changing perceptions of significance" would themselves justify a declaration that the property is an architectural resource today. If that were true, an environmental impact study would be triggered for every building in the city over 30 years old (as a potential landmark) or 50 years old (potentially for listing as an historic place). That was not the intent of this section. Indeed, the CEQR Technical Manual advises consultation with the LPC, which occurred here (see CEQR Technical Manual at 3F-11).
Petitioners have also misinterpreted the scope of the CEQR and SEQRA criteria. Following petitioners' reasoning, a building is a "historical resource" if it is "important," regardless of whether it is, or eligible to be, a landmark or an historic place. However, eligibility is built into CEQR's definition of "historic resource." For SEQRA, the only example of an "important architectural resource" is a historical landmark listed on the National Register of Historic Places (9 NYCRR 464.15 [a] [5]).
As another example of the Deputy Mayor's Office alleged failure to take a hard look, petitioners assert that the negative declaration did not mention that historic resources were an area of concern. However, this is improperly raised for the first time in reply (see Ritt v Lenox Hill Hosp., 182 AD2d 560, 562 [1st Dept 1992]), and it is without merit. Judicial review of the negative declaration is not limited to the declaration itself. An environmental assessment and its accompanying reports "may demonstrate the sufficiency of a lead agency's examination, analysis and conclusion regarding the environmental effect of a proposed action" (Matter of Stewart Park & Reserve Coalition v New York State Dept. of Transportation, 157 AD2d 1, 7 [3d Dept 1990], affd 77 NY2d 970 [1991]).
Given all of the above, the court concludes that the Deputy Mayor's Office took a "hard look" at the impact of the building's sale on the historic resources in the area, including whether the building was an historic resource (see Matter of Committee to Preserve Brighton Beach and Manhattan Beach, 259 AD2d at 35).
Reasoned Elaboration
Petitioners maintain that the Deputy Mayor's Office did not make a reasoned elaboration for its findings, citing the following paragraph:
"The existing building at Two Columbus Circle is not a designated local, state or [*8]National Landmark or located in a historic district, nor is it eligible for listing on the state or National registers. It is, however, an important historic civic structure in northern Midtown Manhattan that stands out among the high-rise residential and/or office buildings in Midtown. As noted previously, the NYC LPC's Research Department and Designation Committee carefully reviewed the building's architectural merits and its historical and cultural associations in 1996, and declined to recommend the building to the full Commission for consideration"
(Petitioners' Ex 14, at C-10). According to petitioners, only this paragraph contains the basis for the Deputy Mayor's Office's conclusion that the project would have no impact. Petitioners further contend that it is inconsistent for the EAS to state that the building is "an important civic structure" and yet conclude that there is no impact.
The court finds that the Deputy Mayor's Office provided a reasoned elaboration on its conclusion that the sale would not result in any environmental impact on the area's historic resources. According to the EAS, no impact would result on historic resources because: 1) the building at Two Columbus Circle is not an historic resource; 2) the project does not alter the visual context of any other designated historic resources in the area; and 3) the project does not detract from the underlying architectural and historical cohesion of the Columbus Circle area (City Respondents' Ex D, Attachment B at 7).
It is an open question as to whether the "reasoned elaboration" requirement extends to any of the specific agency findings that would support the agency's ultimate finding of no impact. Assuming that this is the case, a secondary issue arises as to the degree of explanation required for any specific finding. Ultimately, any detailed explanation here as to the building's worth as an historic resource would sound subjective. After all, petitioners are puzzled that the EAS would state that the building is an "important civic structure" and yet not find that the building is worth preserving. This is not inconsistent. As discussed above, the criteria for eligibility as a landmark or for listing as an historic place refer to a "special" character and an "exceptional" importance. Apparently, the Deputy Mayor's Office and the LPC believe that "important" just does not make the cut. In the end, that reason is sufficiently elaborated with respect to matters of architectural and historical significance.
The paragraph that petitioners cite above does not contain any reference to the building's eligibility as a landmark, but petitioners are selectively reading the EAS. The building's ineligibility as a New York City landmark is mentioned in another part of the EAS (see City Respondents' Ex D, Attachment B at 7).
Finally, petitioners accuse the Deputy Mayor's Office of abdicating its responsibility of assessing impact to the LPC, citing a case where the lead agency improperly delegated its SEQRA responsibilities to another agency (Matter of Martin v Koppelman, 124 AD2d 24 [2d Dept 1987]). To some extent, this argument is also raised improperly for the first time in reply. Improper delegation to another agency is not synonymous with the failure to take a "hard look." Cases discussing improper delegation involve an entire transfer of fact-finding responsibility to another agency, pursuant to local laws or executive orders (see Matter of Coca-Cola Bottling Co. of N.Y. v Board of Estimate of the City of N.Y., 72 NY2d 674 [1988]; see also Glen HeadGlenwood Landing Civic Council v Town of Oyster Bay, 88 AD2d 484 [2d Dept 1982]).
To the extent that petitioners argue that the Deputy Mayor's Office failed to "independently assess" the LPC' s input, they do not meet their burden of proof. Nothing in the EAS indicates the weight that the Deputy Mayor's Office gave to the LPC's input.[FN5] The EAS contains information [*9]about the building that the Deputy Mayor's Office would need to reach its own conclusions about the building's eligibility as a landmark or as an historic place. Because it is equally likely that the Deputy Mayor's Office viewed the LPC as either persuasive or controlling authority, petitioners have not met their burden of demonstrating that the Deputy Mayor's Office improperly deferred to the LPC's authority.
What the environmental assessment statement and negative declaration did not underscore was that, despite vigorous repeated attempts and continuing pressure on the Landmarks Preservation Commission and the New York State Office of Parks Recreation and Historic Places, neither agency has accorded Two Columbus Circle landmark status or a place on the State or national register of historic places. What the EAS and declaration could not underscore was the community's subsequent rejection of Two Columbus Circle's importance or historical significance, when Community Board 5 approved the sale. It similarly could not underscore the fact that the highest elected Borough Official, the Borough President of Manhattan, recommended the sale.
Two Columbus Circle has been an orphan for the better part of its existence. Built in 1964, it was abandoned by its Patron after only a few years, when it was conveyed to the Gulf and Western Corporation. In 1980, Gulf and Western "donated" the building to the City for "visitors service and cultural affairs." In 1994 the City purchased the reversionary interest for $10. The better part of the building has essentially lain fallow for most of this time. The State and City, by its agencies, and the people through their Community Board and elected officials have concluded that Two Columbus Circle is not worthy of preservation in its present form. Petitioners have had ample opportunity to plead the building's importance to the community and to the constituent agencies. The court perceives no valid reason to nullify Respondents' determination.
 Accordingly, it is
ADJUDGED that the petition is denied, and the proceeding is dismissed.
This memorandum opinion constitutes the decision and order of the Court.

 HON. WALTER B. TOLUB, J.S.C.
Decision Date: April 15, 2004
Footnotes

Footnote 1: In this decision, "City Respondents" refers to respondents Amanda Burden, Robert Kulikowski, Andrew Alper, Martha Hirst, and the respective City agencies that they represent.

Footnote 2: This standard of review, developed from cases involving SEQRA, applies equally to CEQR challenges (see Matter of New York City Coalition to End Lead Poisoning, 100 NY2d at 348; see also Chinese Staff & Workers Assn. v. City of New York, 68 NY2d 359, 363-364 [1986]).

Footnote 3: Petitioners also disagree with the probative value of the decision of the LPC's Research Department and Designation Committee to decline to recommend the building to the full Commission for consideration, which was mentioned several times in the EAS. According to petitioners, this decision was not tantamount to a declaration of ineligibility, because LPC did not explain it's actions. The court regards this argument as specious. First, "because LPC has complete discretion over whether to afford formal consideration to (i.e. calendar) any item, let alone over the decision whether a calendared item ultimately gets landmark status, there is simply no reason, in law or logic, to require that it create a full administrative record" (Matter of Deane v. City of New York Dept. of Bldgs., 177 Misc 2d 687, 698 [Sup Ct NY County 1998]). Second, regardless of what the LPC's decision in 1996 means, its comments to the draft EAS indicate that it still did not consider the building eligible to be a landmark, even as of January 2003 (see City Respondents' Ex. D at Appendix A). That certainly amounts to a declaration of ineligibility. 

Footnote 4: CEQR provides that an indicator of significant adverse impacts on the environment is "the impairment of the character or quality of important historical, archeological, architectural, or aesthetic resources (including the demolition or alteration of a structure which is eligible for inclusion in an official inventory of such resources) or of existing community or neighborhood character" (62 RCNY §6-06[a][v]). The SEQRA regulation is essentially identical to the CEQR rule. The only difference is that the material in parentheses in the CEQR rule does not appear in the SEQRA regulation (see 6 NYCRR 617.7[c][1][v]).

Footnote 5: Affording significant deference to the opinions expressed by the LPC however, would have been entirely appropriate. Criteria utilized by the LPC is not designed to solely protect landmarks that appeal to a wide audience. "If the preservation of landmarks were limited to only that which has extraordinary distinction or popular appeal, much of what is rare and precious in our architectural and historical heritage would soon disappear. It is the function of the Landmarks Preservation Commission to ensure the continued existence of those landmarks which lack the widespread appeal to preserve themselves" (Society for Ethical Culture in the City of New York v Spatt, 68 AD2d 112 [1st Dept 1979]).