OPINION OF THE COURT
Louis B. York, J.
This is the 25th motion in an action begun nearly 12 years ago to require defendants to comply with statutory requirements for the removal of lead-based paint hazards for residential buildings in New York City. "Patience may be a virtue, but from Genesis to the fulfillment of the Apocalypse, or the coming of the Messiah, is too long a period of time to have to wait for an administrative agency to comply with its duty to enforce the law” (Matter of New York Assn. of Convenience Stores v Urbach, 170 Misc 2d 445, 449 [Sup Ct, Albany County 1996]).
This motion seeks to hold the defendants in civil and criminal contempt on the ground that the defendants have disobeyed this court’s previous orders. It also seeks to enjoin amendments to the Health Code, substitute Lillian Barrios-Paole as Commissioner of the New York City Department of Housing Preservation and Development and award plaintiffs damages, costs, disbursements and attorneys’ fees.
GOVERNING STATUTE
The battle continues to rage over the failure of the defendants to implement regulations to enforce Administrative Code of the City of New York § 27-2013 (h), which states:
"(1) The owner of a multiple dwelling shall remove or cover in a manner approved by the department any paint or other similar surfacecoating material having a reading of 0.7 milligrams of lead per square centimeter or greater or containing more than 0.5 percent of metallic lead based on the non-volatile content of the paint or other similar surface-coating material on the interior walls, ceilings, doors, window sills or moldings in any dwelling unit in which a child or children six (6) years of age and under reside.
"(2) In any multiple dwelling erected prior to January first, nineteen hundred sixty in which paint or other similar surface- *237 coating material is found to be peeling on the interior walls, ceilings, doors, window sills or moldings in any dwelling unit in which a child or children six (6) years of age or under reside, it shall be presumed that the peeling substance contains more than 0.5 percent of metallic lead based on the non-volatile content of the paint or other similar surface-coating material or having a reading of 0.7 milligrams of lead per square centimeter or greater.
"(3) The existence of paint or other similar surface-coating material having a reading of 0.7 milligrams of lead per square centimeter or greater or containing more than 0.5 percent of metallic lead based on the non-volatile content of the paint or other similar surface-coating material in the interior walls, ceilings, doors, window sills or moldings in any dwelling unit in a multiple dwelling in which a child or children six (6) years of age and under reside shall constitute a class C immediately hazardous violation and subject the owner of such multiple dwelling to the penalties for such violation provided in article two of subchapter five of this code. The presumptions established in paragraph two of this subdivision may be rebutted by the owner of the multiple dwelling. Such proof shall be in form and substance acceptable to the department or a court of competent jurisdiction.
"(4) The department shall transmit to the department of health a list of violations placed pursuant to this section, by premises.
"(5) The department shall establish procedures for the enforcement of this subdivision.”
PREVIOUS DECISIONS
Justice DeGrasse’s July 6, 1989 decision in this action held that the defendants had failed to implement regulations to (1) inspect all complaints of the existence of lead paint and (2) abate the condition, including paint on intact surfaces, (3) in all multiple dwellings where children under seven years of age reside. However, the court did not require testing where there was peeling paint in pre-1960 buildings; rather, the defendants were ordered to immediately abate the condition. The court also held that the proposed regulations also failed to provide safety procedures for all persons and to provide for the removal of pregnant women and children from the premises during the abatement procedure.
Rather than proceeding to adopt regulations as ordered by Justice DeGrasse, the City drafted a proposed legislation which *238 included the repeal of Administrative Code § 27-2013. In a decision dated May 4, 1993, Justice DeGrasse held the City in civil contempt.* These decisions were all upheld on appeal. In one of the many decisions concerning this lawsuit, the Appellate Division (New York City Coalition to End Lead Poisoning v Koch, 216 AD2d 219, 220 [1st Dept 1995]) concluded: "The record contains convincing proof of the deleterious health consequences of the exposure of children to lead from peeling paint. The City Council recognized this danger and enacted a comprehensive statute that places mandatory duties on several municipal agencies. Those agencies have failed to fulfill that mandate in numerous respects in direct violation of a lawful order of the Supreme Court. Contempt proceedings are the appropriate means to compel these agencies to comply with the injunctions.”
The City did not act until the plaintiffs moved for contempt once again — this time before me. That was the 19th motion before this court. On December 14, 1995, in a decision from the Bench, I approved a class consisting of children under seven years living in multiple dwellings where complaints of lead paint have been made which have not been timely and adequately inspected. I held the City and individual City defendants in civil and criminal contempt for once again failing to formulate regulations in accordance with Administrative Code § 27-2013 (h) as well as Justice DeGrasse’s decisions. I noted that the Department of Housing Preservation and Development’s system of prioritizing complaints regarding peeling and nonsurface peeling into three levels of declining importance violated the statute and the court’s orders. It was clear that lead paint violations in the second and third levels would never be addressed — as the City’s attorney, to her credit, candidly admitted. The court’s orders contemplate inspection of all lead paint complaints. In addition, the regulations impermissibly failed to provide for the protection of pregnant women and children during abatement and did not include constraints for the paint removal procedures.
Although I denied that aspect of the plaintiffs’ motion to incarcerate the individual defendants, I warned that defendants’ failure to begin implementing regulations in conformity *239 with the court’s decision within 30 days of service of a copy of this order with notice of entry might result in a different decision in the future. Defendants quickly filed a notice of appeal, resulting in an automatic stay under CPLR 5519. The stay is still in effect.
In the face of all the previous orders of this court and the Appellate Division and while their appeal was pending, the City defendants have formulated amendments to the Health Code which are clearly violative of the court’s prior orders. As a result, plaintiffs brought this motion. The court initially refrained from issuing a decision, hoping that the pending appeal might be quickly decided and might resolve many of the issues in this motion. However, approximately four months have lapsed since that decision was made and in my judgment further delays are unjustified. Contrary to the defendants’ argument that the current stay prevents this court from acting, the stay applies only to this court’s class action order and the civil and criminal contempt citations. Justice DeGrasse’s injunction was appealed and upheld. Therefore, it is still in effect.
It is unclear whether the City defendants can be held in contempt for violating the injunction, which orders them to implement sections of the Housing Maintenance Code, because the challenged amendments relate to the New York City Health Code, codified at 24 RCNY 173.13 (d) (2). However, while the City defendants correctly state that New York City Charter § 558 (b) gives them the power to amend the Health Code, the Administrative Code provisions have the force of statutes in New York City. (Bittrolff v Ho’s Dev. Corp., 77 NY2d 896, 899, n [1991]; Guzman v Haven Plaza Hous. Dev. Fund Co., 69 NY2d 559, 565, n 3 [1987].) An administrative agency’s regulation cannot conflict with a statute. (Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 57 NY2d 588, 595 [1982].) Nor, if I may add the obvious, may it ignore the repeated decisions of the court, which are final and the law of the case.
Here, the City has violated both the statute and the court’s numerous decisions in several respects. First, the City has an obligation under Administrative Code § 27-2013 to abate lead paint conditions in multiple dwellings where children under seven years reside if the paint contains 0.7 milligrams per square centimeter or more of lead. This rule applies whether the lead paint is peeling or not, and it applies regardless of whether a City agency issues a lead paint violation. In addition, the City must provide for the safety of young children *240 and pregnant women where abatement is in progress. Nevertheless, the Health Department’s amended regulations limit its responsibilities for abatement only to peeling surfaces; the Department assumes no responsibility for responding to complaints and abating the condition if it finds paint that has a reading of 0.7 milligrams per square centimeter or more of lead. Instead, it unilaterally changes this standard to 1.0 milligram per square centimeter. It assumes no responsibility at all without the issuance of a lead paint violation by a City agency. Finally, the amended regulations do not provide for the removal of persons at risk such as pregnant women and young children while abatement is ongoing.
THE INJUNCTION
The court holds that the individual City defendants are enjoined from the further implementation of those provisions of the amendments to 24 RCNY 173.13 and 173.14 described above. The City is also enjoined to amend the Health Code consistent with the court’s decisions.
CONTEMPT
I find that the actions of the City and the individual defendants ignored the mandates of both this court and the City Council, which enacted section 27-2013. Defendants’ actions were calculated to and actually did defeat, impair, impede and prejudice the rights and remedies of the plaintiffs. Therefore, I hold the City of New York and each of the City defendants in civil contempt. I impose a fine on the City of New York in an amount equal to the monthly rent of each of the named and intervening plaintiffs, to accrue from the date of service of a copy of the settled order with notice of entry. The fine will continue to accrue until the City of New York is in compliance with that order. This fine is intended to compensate the plaintiffs for their loss of adequate living conditions resulting from the lead paint infestation. The fine shall be paid directly to the plaintiffs within 15 days of the service of a copy of the settled order with notice of entry, and on the first day of each successive month thereafter. (See, McCain v Guiliani, NYLJ, May 16, 1996, at 28, col 4 [Sup Ct, NY County].) This provision for the fine shall not apply to intervenor Helen Walker, who has brought a separate motion for contempt.
The plaintiffs are also awarded attorneys’ fees, costs and disbursements. A hearing shall be held not less than 30 days after the order is settled to monitor compliance. At that hear *241 ing, the court may impose additional penalties for further contempt if steps have not been taken to amend the Health Code in compliance with the order settled on this decision. The court will take evidence to determine the amount of attorneys’ fees to be ordered.

 As part of the fine, the City was ordered to reimburse intervener Helen Walker for the rent of her apartment until the regulations required by the court were enacted. The City’s act in discontinuing such payment is the subject of another contempt motion decided simultaneously with this decision.