Matter of Community Preserv. Corp. v Miller (2004 NY Slip Op 24305)

Matter of Community Preserv. Corp. v Miller

2004 NY Slip Op 24305 [5 Misc 3d 388]

August 27, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, January 5, 2005

[*1]
In the Matter of Community Preservation Corporation et al., Petitioners,
v
A. Gifford Miller, as Speaker of the City Council of the City of New York, et al., Respondents, and Cordell Cleare et al., on Behalf of New York City Coalition to End Lead Poisoning, Inc., et al., Intervenors-Respondents.
Supreme Court, New York County, August 27, 2004

APPEARANCES OF COUNSEL

Carter, Ledyard & Milburn, LLP, New York City (Clifford P. Case and Jean McCarroll of counsel), for A. Gifford Miller and another, respondents. Dewey Ballentine, LLP, New York City (David J. Grais, Christine Chi, Sabrineh Ardalan and Elizabeth A. Haley of counsel), for petitioners. Andrew Goldberg, New York City, for Chris Meyer, on behalf of New York Public Interest Research Group, Inc., intervenor-respondent. Northern Manhattan Improvement Corporation, New York City (Kenneth Rosenfeld and Matthew J. Chachêre of counsel), for Cordell Cleare and others, intervenors-respondents.

{**5 Misc 3d at 389} OPINION OF THE COURT

Louis B. York, J.
In this CPLR article 78 proceeding brought by the petitioners to stay the implementation of Local Law No. 1 (2004) of the City of New York (Local Law No. 1), this court once again is called upon to determine the validity of a locally enacted lead paint statute. Petitioners allege that the legislation is invalid because (1) the City Council of New York did not comply with the State Environmental Quality Review Act (SEQRA) or with the City Environmental Quality Review rules (CEQR) prior to enacting Local Law No. 1, (2) Local Law No. 1 is a violation of their due process rights, and (3) that the City Council's enactment of Local Law No. 1 was ultra vires, beyond the scope of its power. Currently, respondents move to dismiss petitioners' claims because (1) petitioners lack standing to bring suit, (2) petitioners present no justiciable case or controversy that the courts may hear, and (3) petitioners' ultra vires claim is not ripe. Because none of petitioners come within the zone of environmental harm that the State Environmental Quality Review Act aims to avoid, petitioners lack the requisite standing to bring this action under SEQRA; and as the court explains infra, the other arguments lack merit. Accordingly, the court grants respondents' motion to dismiss.

History

In 1982, the City Council enacted Local Law No. 1 (1982) of the City of New York to reduce the number of lead-poisoning cases in children six and under. To accomplish this goal, the law required that owners of pre-1960 multiple dwelling units, in which a child of six or under resided, remove or cover any lead paint on the interior walls, ceilings, doors, window sills and moldings. The [*2]presumption was that all peeling paint in pre-1960 buildings where a child six or younger resided was lead-based paint; this presumption, however, was rebuttable. (Administrative Code of City of NY § 27-2013 [former (h) (1)].){**5 Misc 3d at 390} The necessary safety precautions for the removal procedure were left to the Department of Health and Mental Hygiene (DOH) to devise, which it did by enacting 24 RCNY former 173.14 (Health Code). Furthermore, the Department of Housing Preservation and Development (HPD) was required to establish enforcement procedures. Local Law No. 1 (1982) prohibited both peeling paint and intact paint having a reading of 0.7 milligrams per square centimeter or containing more than 0.5% of metallic lead paint, thereby requiring the removal of practically all lead-based paint (lead-free program). (Administrative Code § 27-2013 [former (h) (1), (3)]; New York City Coalition to End Lead Poisoning v Giuliani, 173 Misc 2d 235, 239 [Sup Ct, NY County 1997].) However, HPD's failure to devise enforcement regulations for over 15 years was the subject of a great deal of litigation, injunctions and fines. (See, e.g., Giuliani, 173 Misc 2d at 236.)
In part to enact adequate enforcement provisions and comply with court orders and in part to overturn the court's rulings on the removal of intact lead paint (lead-free program), the City Council passed Local Law No. 38 (1999) of the City of New York. In Local Law No. 38, the City Council removed the requirement that intact lead paint be removed from surfaces. According to various experts' testimony, this complete removal requirement would likely have the effect of increasing children's exposure to lead dust. This was known as the "lead safe program." Local Law No. 38 also addressed the issue of lead dust, incorporating some but not all of the Health Code's remediation provisions as well as the Administrative Code into the law. Adversaries of the law believed that the level of attention paid to lead dust was inadequate. Local Law No. 38 also allowed for "interim" remediation procedures which were less strict than those in the Health Code and included extremely long periods over which to comply. In 2003, the Court of Appeals unanimously overturned Local Law No. 38 for failure to comply with SEQRA. (Matter of New York City Coalition to End Lead Poisoning v Vallone, 100 NY2d 337 [2003].) This reinstated Local Law No. 1 (1982). In response, the City Council drafted and passed Local Law No. 1 (2004), which petitioners challenge here.

Local Law No. 1 (2004)

Local Law No. 1 requires the removal of lead-based paint that is peeling. It eliminates the requirement that intact lead paint with a reading of 1.0 milligrams of lead per square centimeter or {**5 Misc 3d at 391}greater than 0.5% be removed in a multiple dwelling where a child under seven resides. In this respect, the new law uses the "lead safe" approach. At the same time, this law contains a presumption that, in the dwelling unit and the common areas in pre-1960 buildings where a child under seven resides, all "paint or other similar surface-coating material" and the paint on all "chewable surfaces" are lead-based paint. (Administrative Code § 27-2056.5.) Local Law No. 1 (1982) presumed only that peeling paint was lead based. As in the 1982 law, the presumption in Local Law No. 1 is rebuttable. (Administrative Code § 27-2056.5.)
The landlord is required to inquire annually as to the presence of children in its apartments and to investigate if any tenant does not respond to the inquiry. (Administrative Code § 27-2056.4.) The landlord has a duty under the law to investigate the dwelling units in which children under seven reside, to inspect all common areas for the presence of lead-based paint hazards, to remove or cover all lead paint on all friction surfaces, and to replace window slides and panes on friction surfaces with lead paint.
[*3]
Finally, the maximum allowable lead level of 1.0 milligrams per square centimeter or 0.5% of metallic lead represents an increase of 0.3 milligrams of lead per square centimeter over Local Law No. 1 (1982) in accordance with contemporary HUD standards. (Administrative Code § 27-2056.1 [a] [3].)[FN1]

Contentions

Petitioners contend that the City Council did not comply with SEQRA[FN2]

because it failed to prepare an environmental impact statement. They contend that they are the proper parties to bring suit because (1) those members that they represent are adversely impacted by Local Law No. 1, (2) they are in a contractual relationship with those persons whom the law was passed to protect, and (3) the harm they have suffered or will suffer {**5 Misc 3d at 392}is not speculative or attenuated. Petitioners are nonprofit organizations which either are or represent landlords who purchase and renovate pre-1960 buildings that comprise low- or moderate-income housing.
Respondents move to dismiss, contending that the petitioners do not have standing under SEQRA to challenge Local Law No. 1. They claim the alleged injury is too speculative and is not within the zone of environmental interests sought to be protected by SEQRA.

Analysis

Standing is the most basic requirement for a petitioner to meet when seeking judicial review, especially under SEQRA. (See Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 769 [1991].) The standing determination is made without regard to the merits of the case. (Id. at 770.) To establish standing, petitioners must show (1) that they have suffered injury in fact; (2) that the alleged injury falls within the zone of interest that the statute covers; and, finally, (3) that the injury asserted is different from that suffered by the public at large. (Id. at 773.) However, the injury must be more than mere speculation or conjecture. (See New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004].) It must also be based on more than solely economic concerns. (See Society of Plastics, 77 NY2d at 774.) The "zone of interest" requirement prevents "groups whose interests are only marginally related to, or . . . inconsistent with, the purposes of the statute" from using SEQRA challenges to flout important governmental objectives. (See Society of Plastics Indus. v County of Suffolk, 77 NY2d at 774.) Furthermore, if the party seeking standing is an association, and none of its members are joined in the action, it must establish (1) that one or more of its members has standing to sue, (2) that its interests fall within the statutory purpose, and (3) that neither the claim nor the relief sought [*4]requires the participation of the individual members. (Id. at 775.)
Petitioners assert that, to comply with Local Law No. 1, they will have to incur added financial burdens that will make it impossible for them to purchase and renovate low- and moderate-income dwellings. Their allegation of environmental injury is based upon the potential displacements of area residents and the reduced availability of low-income housing that will result from these burdens, and upon the economic harm associated with the remediation and notification requirements. Although the amount of the economic burden is unclear,{**5 Misc 3d at 393} petitioners' argument that it will cost money to comply with the Local Law No. 1 is sufficiently concrete. For the reasons stated above, however (see, supra at 392), economic harm is not enough to create standing under SEQRA. And, the environmental injury petitioners assert here is based upon several levels of speculation: first, that the regulations will be rigorously enforced (see Nurse Anesthetists, 2 NY3d at 213 [stating that the rigorous enforcement of guidelines constitutes one level of speculation]); second, that remediation and notification will increase costs so substantially that the rents will increase and that the low-income housing stock will decrease; and third, that petitioners themselves would be so affected as to reduce or eliminate their operations, or suffer harm in some way. The connection between the regulation and the harm cannot be tenuous or ephemeral, relying upon multiple levels of speculation. (Nurse Anesthetists, 2 NY3d at 214.) In Nurse Anesthetists, two levels of speculation were deemed too many. (Id.) In this instance, because of the multiple levels of speculation involved, the alleged environmental injury is too speculative to be deemed in fact.
Next, the petitioners allege they are different from the public at large because they will have to bear the financial burden of complying with the work practices set out in Local Law No. 1. However, the presence of an economic motive alone does not constitute grounds for standing in a SEQRA action. There must also be environmental impacts. (See Society of Plastics Indus. v County of Suffolk, 77 NY2d at 774; Matter of Nature's Trees v County of Nassau, 293 AD2d 544, 546 [2d Dept 2002], lv denied 98 NY2d 608 [2002].) Here, petitioners do not show any environmental impact on them beyond their speculation of a decrease in the housing stock as a result of the alleged future abandonment by petitioners of their buildings as a result of increased expenses that is separate and distinct from the public at large. These financial considerations are not within the zone of interest sought to be protected by SEQRA. (See Society of Plastics Indus. v County of Suffolk, 77 NY2d at 774; Nature's Trees v County of Nassau, 293 AD2d at 546.)
In addition, petitioners assert that they are the appropriate representatives for this litigation because their members will be exposed to greater tort litigation and frustration of their public purpose. But, as the court has already stated, the members' injuries are to their pockets. These economic and financial concerns are not environmental concerns sufficient to confer standing {**5 Misc 3d at 394}under SEQRA, as they do not fall within the zone of environmental interests that the statute seeks to protect.

Additional Claims

Petitioners raise two other arguments, both of which the court finds to be lacking in merit. For one, petitioners allege that the City Council and City overreached their power in enacting Local Law No. 1. However, as described above (see, supra at 389-390), there is a long line of legislation in New York City relating to the enforcement and regulation of lead paint in New York City apartment buildings. These laws have been litigated in the courts of this state for [*5]decades; and, among other things, their legitimacy has been challenged. However, neither the courts of this state nor the State Legislature have ever indicated, in any fashion, that the City had no power to legislate in this area. It would be up to the State Legislature or the Court of Appeals, not to this trial court, to hold otherwise. Moreover, this court concludes that the legislation constitutes a legitimate exercise of power.
In addition, petitioners contend that, because there is a presumption that there is lead paint in certain buildings in certain contexts, Local Law No. 1 violates petitioners' due process rights. However, as respondents note, the presumption is rebuttable. Moreover, and importantly, the presumption, on its own, does not result in the imposition of either civil or criminal penalties. Before any penalties are imposed, a landlord must, inter alia, (1) refuse to provide evidence that there is no lead paint in the building, and (2) refuse to comply with orders to abate the problem. Criminal penalties will not be imposed until and unless there are severe, wilful violations of the law. Therefore, contrary to petitioners' suggestion, there is no presumption of guilt. Instead, it is presumed that a landlord will comply with the law, and penalties result only upon a showing of its failure to do so.
Accordingly, it is ordered and adjudged that this action is dismissed with costs.

Footnotes

Footnote 1: This is a brief summary of pertinent portions of the statute. For a full review, the reader can examine the full statute.

Footnote 2: Petitioners also assert challenges under the City Environmental Quality Review rules, "CEQR, which implements SEQRA in the City of New York, requires City agencies to assess the environmental consequences of their decisions to fund, approve or directly undertake an action." (Landmark West! v Burden, 3 Misc 3d 1102[A], 2004 NY Slip Op 50331[U], *3 [Sup Ct, NY County 2004], citing Matter of 27th St. Block Assn. v Dormitory Auth. of State of N.Y., 302 AD2d 155, 157 [1st Dept 2002].) As the legal analysis is identical in the context at hand, the court addresses the SEQRA and CEQR arguments together.