OPINION OF THE COURT
Per Curiam.
This article 78 proceeding was commenced on behalf of 25 patients (petitioners) at Creedmoor Psychiatric Center, a facility under the jurisdiction of respondent Commissioner of the Office of Mental Health (OMH), seeking transfer to an appropriate facility under the jurisdiction of respondent Commissioner of the Office of Mental Retardation and Developmental Disabilities (OMRDD). The central issues on appeal are, first, whether respondents are precluded by a decision in another action from litigating the issues raised and, second, whether at this juncture respondents can be compelled to transfer patients when they contend they lack the funding and facilities to do so. We conclude that respondents are not estopped from litigating the issues raised, and that on this record mandamus does not lie to compel the transfer. *
In 1977 the Legislature created three independent offices: OMH, charged with treatment of the mentally ill; OMRDD, charged with treatment of the mentally retarded and developmentally disabled; and an Office of Alcoholism and Substance Abuse (see, L 1977, ch 978). This division of responsibilities made it necessary for the State to test and classify patients in its care, for transfer to the appropriate facility. By early 1982, according *49 to respondents, some 800 patients had been identified who clinically belonged in OMRDD facilities — including petitioners — but who could not be accepted immediately because of a claimed lack of funds and facilities. With newly appropriated funds, a three-year plan was drawn, projecting that OMRDD would be able to accept all of these patients by the close of the 1984-1985 fiscal year. As of June 15, 1985, some 340 such patients remained in OMH facilities.
Petitioners urge that they are entitled to immediate transfer because placement of clinically eligible patients in OMRDD facilities and suitable treatment are mandated by the Mental Hygiene Law, and that in any event respondents are estopped to deny the right to immediate transfer by Savastano v Prevost (NYLJ, June 4, 1982, p 15, col 3) (Savastano I), a decision of Supreme Court, Queens County, holding that the Mental Hygiene Law mandated suitable placement and ordering transfer within 60 days of three Creedmoor patients. Respondents, in support of their motion to dismiss, contend that implementation of their transfer plan is dependent on appropriations, which have been delayed, and have submitted affidavits setting forth the measures taken to effect transfers. Respondents further urge that transfer is a discretionary duty for which mandamus does not lie, that they have not acted arbitrarily, and that they are not estopped by Savastano I. Special Term concluded that Savastano I precluded relitigation of the issues raised by respondents, and granted the petition, directing transfer within 90 days to an appropriate OMRDD facility. The Appellate Division affirmed, citing Savastano I. We now reverse.
Respondents are not estopped from litigating the propriety of immediate transfer of petitioners. Savastano I was brought on behalf of three Creedmoor patients eligible for transfer, and these patients were actually transferred shortly after judgment and before an appeal was perfected. There were at that time some 800 patients eligible for transfer. Moreover, the three petitioners in Savastano I were in the initial group of patients scheduled for transfer. No similar showing of priority has been made with respect to the 25 petitioners here. In addition, there is no evidence that the State "explicitly * * * recogniz[ed] the potential preclusive effects of an adverse determination in [the prior] case” (Koch v Consolidated Edison Co., 62 NY2d 548, 557), when it chose— upon transfer of the three petitioners — not to pursue its appeal to the Appellate Division. In sum, a review of " 'the realities of litigation’ ” (Gilberg v Barbieri, 53 NY2d 285, 292) demonstrates that preclusion is unwarranted.
*50 On the issue before us, there is no basis for mandamus compelling the transfer. Mandamus may lie to compel the performance of a ministerial, nondiscretionary act where there is a clear legal right to the relief sought (Klostermann v Cuomo, 61 NY2d 525, 539), but no such right has been shown here. There is no contention that respondents have failed to formulate any plan for the transfer of patients from OMH to OMRDD; indeed, the converse is evident on this record. Petitioners cite various sections of the Mental Hygiene Law, including sections 5.05 (b), 13.01 and 33.03 (a), but none of these can be considered a directive to transfer patients immediately. Section 13.01 declares the policy of the State to develop and implement a comprehensive system of services, and section 5.05 (b) directs the Commissioners to "ensure that the state policy * * * is planned, developed and implemented comprehensively”. Section 33.03 provides generally that each patient "shall receive care and treatment * * * suited to his needs”.
Moreover, other sections of the Mental Hygiene Law demonstrate the intention of the Legislature not to create a mandatory duty but to vest discretion in respondent Commissioner, and to allow him to consider budgetary restrictions in implementing a program. Section 13.15 (a), for example, provides that the OMRDD Commissioner shall "take all actions that are necessary, desirable, or proper to implement the purposes of this chapter and to carry out the purposes and objectives of the office within the amounts made available therefor by appropriation grant, gift, devise, bequest, or allocation from the mental hygiene services fund established under section ninety-seven-f of the state finance law.” Section 29.07 (a) of the Mental Hygiene Law provides that the Commissioner "may by order defer admissions to any facility in the department when the total number of patients therein exceeds its capacity to an extent which will not permit adequate care and treatment to be provided patients.”
Finally, the petition alleges that the refusal of OMRDD to accept the petitioners for care and treatment both violated their "constitutional rights to treatment guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution” (see, Youngberg v Romeo, 457 US 307, 319-323; Jackson v Indiana, 406 US 715, 738; Matter of Kesselbrenner v Anonymous, 33 NY2d 161, 165) and was arbitrary, capricious and an abuse of discretion (see, CPLR 7803 [3]; Matter of Pell v Board of Educ., 34 NY2d 222, 231). These issues raised by the petition have not yet been considered by either court below.
*51 Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to Supreme Court, Queens County, for further proceedings on the petition.
Chief Judge Wachtler and Judges Jasen, Meyer, Simons, Kaye, Alexander and Titone concur in Per Curiam opinion.
On review of submissions pursuant to section 500.4 of the Rules of the Court of Appeals (22 NYCRR 500.4), order reversed, etc.

 While all 25 patients who are the subject of the petition have by now been transferred to an OMRDD facility, we retain jurisdiction because of the substantial issues raised, the likelihood of repetition, and the fact that these issues may otherwise evade review (see, Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714-715).