In the Matter of NORTHEAST CENTRAL SCHOOL DISTRICT, Appellant-Respondent, v THOMAS SOBOL, as Commissioner of Education, Respondent, and JEREMY HOFFMAN, an Infant, by CATHERINE WHEELER et al., His Parents, Respondent-Appellant.

Third Department, July 25, 1991

APPEARANCES OF COUNSEL

*Raymond G. Kuntz, P. C. (Wendy F. Klarfeld* on the brief), for appellant-respondent.

*Rosalee Charpentier* for respondent-appellant.

*Lizette A. Cantres (Richard J. Trautwein* of counsel), for respondent.

### OPINION OF THE COURT

CASEY, J.

This proceeding has its genesis in the Education of the Handicapped Act (20 USC § 1400 *et seq.),* which was created by Congress to provide handicapped children with access to an appropriate public education *(see, Matter of Semel v Ambach,* 118 AD2d 385, 387), and New York's implementation plan (Education Law art 89). At issue on this appeal is whether respondent Commissioner of Education has the authority to order a school district to reimburse the parents of a child who resides within the district for tuition paid to another school district after the parents removed the child from the school

district where he resided due to their dissatisfaction with the special education services provided for the child. We conclude that the Commissioner has the authority to order tuition reimbursement, but only within the context of the review process established by Education Law § 4404.

Pursuant to Education Law § 4402 (2) (a), each school district is required "to furnish suitable educational opportunities for children with handicapping conditions by one of the special services or programs listed in [Education Law § 4401 (2)]. The need of the individual child shall determine which of such services shall be rendered." In determining the individual child's need, the school district is assisted by a committee on special education (hereinafter CSE), which is required, *inter alia,* to identify, review and evaluate at least annually, the status of each child with a handicapping condition and each child thought to be handicapped who resides within the school district, and to make recommendations to the child's parents and Board of Education as to appropriate educational programs and placement (Education Law § 4402 [1] [b] [3] [a]-[h]). If the CSE's recommendation is not acceptable to the parents, or if the CSE or the Board of Education fails to make or effectuate the recommendation within the prescribed time period, the parents can institute an administrative appeal process by notifying the Board of Education (Education Law § 4404 [1]). The Board is then required to appoint an impartial Hearing Officer to hear the appeal and make a determination (§ 4401 [1]). Although a final appeal from a Hearing Officer's determination to a State review officer is *now* authorized by Education Law § 4404 (2), when the administrative determination on review here was made the Commissioner was the officer responsible for the final step of the appeal process.

In July 1985, petitioner's CSE classified respondent Jeremy Hoffman, a student attending petitioner's school, as a health-impaired student, finding that although Jeremy did not have a learning disability, his cystic fibrosis was affecting his school behavior and ability to learn. Based upon the CSE's recommendation, petitioner placed Jeremy in a regular fourth grade class with special education services involving a resource room and counseling. Although Jeremy's behavioral problems continued during the 1985-1986 school year and his mother expressed her concerns to the CSE, Jeremy was promoted to the fifth grade for the next school year. There is some dispute as to whether and to what extent the special education services provided to Jeremy changed during the 1986-1987

school year, but it is undisputed that Jeremy's behavioral problems intensified in the fifth grade and he had failing grades in all academic subjects during the first semester.

Dissatisfied with petitioner's response to Jeremy's behavioral and academic problems, Jeremy's parents removed him from petitioner's school and enrolled him in the nearby Pine Plains Central School District. The Pine Plains CSE classified Jeremy as learning disabled and placed him in a departmentalized special education program with counseling by a school psychologist. Jeremy's academic and behavioral problems greatly diminished after only a few weeks in the Pine Plains program, and he continued to improve during the remainder of 1986-1987 school year and during the 1987-1988 school year.

In June 1987, Jeremy's parents requested petitioner to reimburse them for tuition that they had paid to the Pine Plains school district and to pay for transportation to the Pine Plains school. Petitioner denied the request on the ground that it could provide a program similar to that provided by Pine Plains. The parents requested a hearing, which was conducted by an impartial Hearing Officer. The Hearing Officer sustained petitioner's denial of their request and the parents appealed to the Commissioner. The Commissioner concluded that the program in which Jeremy had been placed by petitioner was inappropriate and that the program provided by Pine Plains was appropriate. Relying upon *Burlington School Comm. v Massachusetts Dept. of Educ.* (471 US 359), the Commissioner also concluded that Jeremy's parents were entitled to reimbursement for tuition and reasonable transportation costs despite their unilateral removal of Jeremy from one public school district and placement in another public school district. Petitioner then commenced this CPLR article 78 proceeding against the Commissioner and Jeremy challenging that determination. Supreme Court dismissed the petition and petitioner appealed. Jeremy cross-appealed from the court's denial of counsel fees.

Petitioner contends that there is no statutory authority which authorizes the Commissioner to order reimbursement for the cost of educating a handicapped student in a public school located outside of the district where the child resides. We reject this argument. As previously explained, the Education Law requires a Board of Education to determine, based upon the need of the individual child, which of the special services or programs listed in Education Law § 4401 (2) is appropriate (Education Law § 4402 [2] [a]). Under Education

Law § 4404 (former [2]), the Commissioner had the authority to "review and modify, in such cases and to the extent that the commissioner deems necessary, in order to properly effectuate the purposes of this article, any determination of the board of education * * * relating to the determination of the * * * selection of an appropriate special educational program or service". The statutory list of special services or programs includes the resource room program initially selected by petitioner in this case (Education Law § 4401 [2] [a]), and it also includes "[c]ontracts with other districts for special services or programs" (Education Law § 4401 [2] [b]). The Commissioner, therefore, had the authority to review petitioner's selection of the resource room program for Jeremy and, if he deemed it necessary to effectuate the purposes of Education Law article 89, to modify petitioner's determination by directing petitioner to contract with the Pine Plains school district for special services or programs for Jeremy (Education Law § 4404 [former (2)]). Accordingly, there is no merit in petitioner's claim that it cannot be compelled to bear the cost of Jeremy's education in another public school district.

█ The more troublesome problem in this case arises out of the parents' unilateral decision to remove Jeremy from petitioner's school and enroll him in the Pine Plains school district before the Commissioner could exercise his review power under Education Law § 4404 (former [2]). As a result, a purely prospective order by the Commissioner directing petitioner to contract with the Pine Plains school district for Jeremy's special services would leave Jeremy's parents responsible for the payment of the educational services provided to him during the appeal process even though the Commissioner has determined that those educational services were appropriate for Jeremy's needs. Because the State must demonstrate that it "has in effect a policy that assures all children with disabilities the right to a *free* appropriate public education" (20 USC § 1412 [1] [emphasis supplied]) to qualify for Federal funds under the Education of the Handicapped Act *(see, Hendrick Hudson Dist. Bd. of Educ. v Rowley,* 458 US 176, 180-181), the Commissioner's review powers under Education Law § 4404 (former [2]) should be construed as including the authority to order tuition reimbursement in a proper case unless such reimbursement is statutorily prohibited or barred by public policy.

Education Law § 4404 (4) provides that, during the pendency of the review procedures, "the child shall remain in the then

current educational placement of such child" unless the Commissioner or local school district and the parents agree otherwise. We do not view this provision as precluding reimbursement to parents who change the child's educational placement without the consent of the Commissioner or local school district when, as here, the Commissioner subsequently concludes that the then-current placement was inappropriate and the new placement was appropriate. In *Burlington School Comm. v Massachusetts Dept. of Educ.* (471 US 359, 372-373, *supra)*, the United States Supreme Court construed a similar provision of the Education of the Handicapped Act (20 USC § 1415 [e] [3]) as not precluding reimbursement when the parents violate the provision. Instead, the court concluded that the statute "operates in such a way that parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk" *(supra,* at 373-374). Education Law § 4404 (4) should be construed to operate the same way.

In the *Burlington* case *(supra)*, the parents of a handicapped child unilaterally enrolled him in an approved private school during the administrative review process commenced by the parents when they disagreed with the placement proposed by the local public school district. The United States Supreme Court held that 20 USC § 1415 (e) (2), which provides for judicial review of the final administrative determination in a State or Federal court and authorizes the court to grant such relief as it deems appropriate, gives the reviewing court "the power to order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP [individualized educational program], is proper under the [Education of the Handicapped] Act" *(supra,* at 369). The court reasoned as follows: "As this case so vividly demonstrates, however, the review process is ponderous. A final judicial decision on the merits of an IEP will in most instances come a year or more after the school term covered by that IEP has passed. In the meantime, the parents who disagree with the proposed IEP are faced with a choice: go along with the IEP to the detriment of their child if it turns out to be inappropriate or pay for what they consider to be the appropriate placement. If they choose the latter course, which conscientious parents who have adequate means and who are reasonably confident of their assessment normally

would, it would be an empty victory to have a court tell them several years later that they were right but that these expenditures could not in a proper case be reimbursed by the school officials. If that were the case, the child's right to a *free* appropriate public education, the parents' right to participate fully in developing a proper IEP, and all of the procedural safeguards would be less than complete. Because Congress undoubtedly did not intend this result, we are confident that by empowering the court to grant 'appropriate' relief Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case" *(supra,* at 370). Although the *Burlington* case dealt with tuition for a unilateral private placement and the authority of a court to order reimbursement pursuant to 20 USC § 1415 (e) (2), we are of the view that the foregoing language establishes that there is no public policy which would prohibit the Commissioner from ordering tuition reimbursement in a proper case as part of his review powers. Accordingly, we conclude that the Commissioner had the authority, pursuant to the administrative review provisions of Education Law § 4404 (former [2]), to order petitioner to reimburse Jeremy's parents for tuition paid by them to the Pine Plains school district during the pendency of the review process.

■ As to the question of transportation costs, Education Law § 4402 (4) (a) requires school boards to "provide suitable transportation to and from special classes or programs". For the same reasons that the Commissioner has the authority to order tuition reimbursement, we conclude that he also has the authority to order reimbursement of reasonable transportation costs. Because the Commissioner's authority to order reimbursement is found in the review provisions of Education Law § 4404 (former [2]), it follows that he has no authority to order reimbursement for any tuition paid prior to the commencement of the review process.

The Commissioner argues that his authority to order reimbursement is derived directly from the *Burlington* case *(supra),* an argument agreed with by Supreme Court in this case. Having concluded that the Commissioner has the requisite authority under the Education Law, we need not decide whether the *Burlington* case also gives him that authority. We note, however, that in *Burlington* the United States Supreme Court considered the authority of the courts to order reimbursement upon review of the final administrative determina-

tion, not the authority of an administrative officer to order reimbursement as part of the final determination.

■ Petitioner also argues that even if the Commissioner had the authority to order reimbursement, his decision to do so in this case was arbitrary, capricious and irrational; we reject this argument. In deciding whether to grant reimbursement, the Commissioner used the standard set forth in the *Burlington* case and concluded that the parents were required to show that the placement proposed by petitioner was not appropriate, that the placement initiated by the parents was appropriate and that equitable considerations support reimbursement. We find nothing irrational in the Commissioner's use of this standard, particularly since appropriateness of the placement is the critical issue under both New York law (Education Law § 4402 [2] [a]; § 4404 [2]) and Federal law *(Burlington School Comm. v Massachusetts Dept. of Educ., supra,* at 369-370). Because the relevant inquiry is whether Jeremy's placement by the Pine Plains school district was appropriate, it is irrelevant that Pine Plains' classification of Jeremy as learning disabled was technically incorrect *(see,* 8 NYCRR 200.1 [cc] [3], now 200.1 [ff] [3]). As noted by the Commissioner, petitioner effectively conceded that the Pine Plains school district's placement was appropriate when it attempted to replicate the Pine Plains' program.

Considering the record as a whole, including petitioner's failure to cope with Jeremy's needs and its reluctance to change while Jeremy attended petitioner's school, as contrasted with the dramatic improvement exhibited by Jeremy in the Pine Plains school district's program, we conclude that the Commissioner rationally determined that Jeremy's parents were entitled to reimbursement. Although petitioner proposed a program for the 1987-1988 school year similar to that offered by Pine Plains, the Commissioner rationally determined that Jeremy's continued placement at Pine Plains was appropriate due to certain differences in the program proposed by petitioner. As previously noted, however, the Commissioner lacked the authority to order tuition reimbursement for any period prior to the commencement of the review process and, therefore, the determination must be modified to delete so much thereof as directed petitioner to reimburse Jeremy's parents for tuition paid to the Pine Plains school district for the 1986-1987 school year.

■ Finally, although Jeremy's parents contend that they are entitled to counsel fees pursuant to 20 USC § 1415 (e) (4)

(B), we see no abuse of discretion in Supreme Court's denial of that request. As to the parents' claim regarding the 1988-1989 school year, that issue was not decided by the Commissioner and, therefore, is not an issue in this proceeding.

MAHONEY, P. J., WEISS, MIKOLL and HARVEY, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as confirmed the determination and dismissed the petition regarding tuition and transportation cost reimbursement for the 1986-1987 school year; determination annulled regarding said cost reimbursement and petition granted to that extent; and, as so modified, affirmed.