[915 NYS2d 747]

In the Matter of ALBANY LAW SCHOOL et al., Appellants, v NEW YORK STATE OFFICE OF MENTAL RETARDATION AND DEVELOPMENTAL DISABILITIES et al., Respondents.

Third Department, January 27, 2011

## APPEARANCES OF COUNSEL

*Jennifer J. Monthie, Disability Advocates, Inc.*, Albany, *Bridgit Burke, Civil Rights & Disabilities Law Clinic*, Albany, and *Patterson, Belknap, Webb & Tyler*, New York City (*Christopher Jackson* of counsel), for appellants.

*Eric T. Schneiderman, Attorney General*, Albany (*Victor Paladino* of counsel), for respondents.

*Paul R. Kietzman, NYSARC, Inc.*, Delmar, for NYSARC, Inc., amicus curiae.

## OPINION OF THE COURT

McCARTHY, J.

Petitioners provide protection and advocacy services to individuals with developmental disabilities pursuant to contracts they entered into with the State Commission on Quality of Care and Advocacy for Persons with Disabilities (hereinafter the Commission), an agency that monitors and oversees the statewide protection and advocacy system (*see* Mental Hygiene Law § 45.07). During an investigation into the discharge planning practices of respondent Office of Mental Retardation and Developmental Disabilities (hereinafter respondent), particularly in two facilities serving individuals with developmental disabilities, petitioners concluded that certain individuals were being neglected because respondent was denying those individuals the opportunity to live in a less restrictive environment (*see* 45 CFR 1386.19). As a result, petitioners requested from respondent, pursuant to Mental Hygiene Law §§ 33.13 and 45.09 and 42 USC § 15043, access to the clinical and medical records of all residents in the two facilities. Respondent denied the request, asserting that petitioners are not entitled to unfettered access to all records. Rather, respondent agreed to provide those records pertaining to individuals for whom petitioners had obtained authorization, either from the individuals themselves or their legal representatives, and, for individuals who were un-

able to provide authorization and did not have a legal representative, as determined by respondent.

Petitioners commenced this combined proceeding pursuant to CPLR article 78 and action pursuant to 42 USC § 1983 to enforce their right of access to all clinical records in respondents' facilities. Prior to answering, respondents moved to dismiss the petition/complaint for failure to state a cause of action and, in the alternative, for an order striking certain paragraphs from the petition/complaint as scandalous and prejudicial. Supreme Court partially granted respondents' motion by striking certain paragraphs of the petition/complaint and finding that petitioners did not have unfettered access to clinical and medical records of residents in respondents' facilities. The court found that petitioners were limited to the access conferred upon them by federal law. Petitioners appeal.

■ Supreme Court did not err in striking certain paragraphs from the petition/complaint. CPLR 3024 (b) permits a court to "strike any scandalous or prejudicial matter unnecessarily inserted in a pleading." Some of the paragraphs at issue here discussed the conditions at Willowbrook and other state institutions in the 1970s that ultimately led to the creation of a protection and advocacy system. The other stricken paragraphs discussed the 2007 death of an individual in respondent's care. While this information may create an interesting historical background for this proceeding, none of it is relevant to petitioners' claims, but it could serve to prejudice respondent (see Soumayah v Minnelli, 41 AD3d 390, 392 [2007]; Halford v First Jersey Sec., 182 AD2d 1003, 1005 [1992]). As those paragraphs are unnecessary, as well as prejudicial, the court did not err in striking them.

On a motion to dismiss, under CPLR 7804 (f) or CPLR 3211 (a) (7), the court must look at the petition/complaint itself, accepting all of its allegations as true, to determine whether a cause of action exists (see Schmidt & Schmidt, Inc. v Town of Charlton, 68 AD3d 1314, 1315 [2009]; Matter of Green Harbour Homeowners' Assn. v Town of Lake George Planning Bd., 1 AD3d 744, 745 [2003]). The court may consider factual affidavits submitted by petitioners to remedy defects in the pleading, but should not consider documents submitted by respondents in support of dismissal (see id.). On the present motion, this Court must review the statutes at issue before considering any factual information. Where, as here, interpretation of the statutes does not depend on any specialized knowledge or competence of the

agency, no deference is accorded to the agency's interpretation (*see Matter of Ball [City of Syracuse—Commissioner of Labor]*, 70 AD3d 1151, 1152 [2010]). Instead, to divine the Legislature's intent, we must construe the statutes according to the unambiguous language employed by the Legislature or, if necessary, by referring to the legislative history (*see Matter of Gruber [New York City Dept. of Personnel—Sweeney]*, 89 NY2d 225, 231-232 [1996]).

■ Two separate state statutes are at issue, each of which provides petitioners with access to facilities and records under different circumstances. Both were enacted in an effort to comply with the federal Developmental Disabilities Assistance and Bill of Rights Act of 1984 (now codified at 42 USC § 15001 *et seq.* [hereinafter the DD Act]). Mental Hygiene Law § 33.13 creates a general right of confidentiality for patient or client records maintained by respondent and the Office of Mental Health. In the list of exceptions to that right of confidentiality, clinical records may be released to the Commission "and any person or agency under contract with the [C]ommission which provides protection and advocacy services pursuant to the authorization of the [C]ommission to administer the protection and advocacy system as provided for by federal law" (Mental Hygiene Law § 33.13 [c] [4]). Petitioners contend that this subdivision provides them with unfettered access to clinical records maintained by respondent. Respondents contend that the subdivision limits petitioners' access to only those records available to protection and advocacy agencies pursuant to the DD Act.[1] The phrase "as provided for by federal law" renders the statute ambiguous. It could mean, as petitioners assert, that the Commission's authorization to administer the protection and advocacy system is provided for by the DD Act, with that reference to federal law having no impact on the records access granted to petitioners. It could also mean, as respondents assert, that the records access is limited to such access "as provided for" in the DD Act.

Because the statutory language is ambiguous, in order to determine the Legislature's intent we look to the legislative history of the amendment that added the relevant subdivision. Prior to its enactment, the Governor and the Commission's chair issued formal assurances that the State was in compliance

---

**1.** The regulations under the DD Act specifically allow protection and advocacy agencies to exercise authority under state law where such authority exceeds that granted by the DD Act itself (*see* 45 CFR 1386.21 [f]).

with the DD Act and would seek legislative amendments to ensure records access for protection and advocacy contract agencies "consistent with the requirements of" the DD Act (Assurances by Governor of State of N.Y. for Protection of Rights & Advocacy for Persons with Developmental Disabilities, March 12, 1985). While other documents indicate that the amendment to Mental Hygiene Law § 33.13 would provide protection and advocacy contract agencies with access to clinical records, none of those documents indicates whether such access would be limited to the access granted under federal law or greater than such federally authorized access. Without any proof that the Legislature intended broader access, Mental Hygiene Law § 33.13 (c) (4) is reasonably limited to only provide access to clinical records maintained by respondent to the extent that access is provided for under the DD Act and its implementing regulations.

■ Mental Hygiene Law § 45.09 (b) provides protection and advocacy contract agencies with broad access to facilities and records of all state agencies and licensees—not just respondent—in response to a complaint. That statute states:

> "Pursuant to the authorization of the [C]ommission to administer the protection and advocacy system as provided for by federal law, any agency or person within or under contract with the [C]ommission which provides protection and advocacy services must be granted access at any and all times to any facility, or part thereof, serving a person with a disability operated or licensed by any office or agency of the state, and to all books, records and data pertaining to any such facility upon receipt of a complaint by or on behalf of a person with a disability" (Mental Hygiene Law § 45.09 [b]).

Similar to their interpretation of Mental Hygiene Law § 33.13, petitioners interpret this statute as granting them unfettered access upon receipt of a complaint, whereas respondents interpret it as limiting petitioners' access to that allowed under federal law. Our interpretation of this statute, however, is aided by the presence of a comma. "Common marks of punctuation are used to clarify the writer's intended meaning and thus form a valuable aid in determining legislative intent" (*A.J. Temple Marble & Tile v Union Carbide Marble Care*, 87 NY2d 574, 581 [1996] [citation omitted]). Viewing the words separated by the comma as one thought, it appears that the words "as provided

for by federal law" merely explain that federal law provides the authorization for the Commission to administer the protection and advocacy system, not that those words limit the access afforded to protection and advocacy contract agencies in response to a complaint (*cf. Valleylab, Inc. v New York City Health & Hosps. Corp.*, 228 AD2d 180, 181 [1996]).[2]

While we need not look any further than the unambiguous language to interpret this statute, even if the language was ambiguous, the legislative history supports the same interpretation. In a letter to the Governor's counsel, respondent's counsel requested disapproval of the amendment on the ground that it "enlarges the scope of access required by the [DD] Act" (Letter from Paul Kietzman to Evan Davis, June 19, 1986, at 2, Bill Jacket, L 1986, ch 184). Contrary to its current interpretation, respondent apparently felt, prior to its enactment, that the statute provided greater access than the access provided for by federal law. Based upon the language of the statute, either alone or in conjunction with its legislative history, Mental Hygiene Law § 45.09 (b) provides petitioners greater access than federal law, including access to state or state-licensed facilities, their books, records and data upon receipt of a complaint, without further limitations.

While unnecessary to determine petitioners' right of access under Mental Hygiene Law § 45.09 (b), we must look at federal law to determine the scope of their right of access under Mental Hygiene Law § 33.13 (c) (4). Under the DD Act, a protection and advocacy agency must be provided access to a developmentally disabled individual's records in any of three circumstances: (1) the individual, either directly or through a representative, consented to access; (2) the individual is unable to consent, does not have "a legal guardian, conservator, or other legal representative" who can grant consent and a complaint has been

---

**2.** Had the Legislature intended to limit access to that provided under the DD Act, the statute could have been worded as follows:

"Pursuant to the authorization of the [C]ommission to administer the protection and advocacy system ~~as provided for by federal law,~~ any agency or person within or under contract with the [C]ommission which provides protection and advocacy services must be granted access, *as provided for by federal law,* at any and all times to any facility, or part thereof, serving a person with a disability operated or licensed by any office or agency of the state, and to all books, records and data pertaining to any such facility upon receipt of a complaint by or on behalf of a person with a disability" (deleted language noted by strikeout; inserted language noted by italics).

received or the agency has probable cause to suspect abuse or neglect of that individual; (3) the individual has "a legal guardian, conservator, or other legal representative" but such representative has failed or refused to act on behalf of the individual after notice of suspected abuse or neglect (42 USC § 15043 [a] [2] [I]; *see* 45 CFR 1386.22 [a]). Only the second category is at issue here, where individuals are unable to consent. Petitioners apparently do not quarrel with the requirement that they must obtain consent if there is a court-appointed "legal guardian." New York no longer appoints conservators (*see* Mental Hygiene Law former art 77, repealed by L 1992, ch 698, § 1), so that category is inapplicable. The key question, therefore, relates to the category "other legal representative[s]."

■ Respondent denied petitioners access to the records of any individuals who had an actively involved adult family member (*see* 14 NYCRR 681.99 [k]), treating such family members as "other legal representative[s]." Under the definitions section of the applicable federal regulations, however, "Legal Guardian, conservator and legal representative all mean an individual appointed and regularly reviewed by a [s]tate court or agency empowered under [s]tate law to appoint and review such officers and having authority to make all decisions on behalf of individuals with developmental disabilities" (45 CFR 1386.19). Although state regulations provide certain rights to actively involved family members (*see* 14 NYCRR 633.11 [consenting to medical treatment], 633.12 [objecting to services], 681.13 [approving of service plans involving an untoward risk]; *see also* 14 NYCRR 624.6 [notification of injuries and incidents], 624.8 [access to records pertaining to allegations of abuse]), such individuals are not appointed or reviewed by a court. Respondent apparently determines which family members may act on behalf of developmentally disabled individuals, but it is questionable whether this authorization—conferred without a formal process of appointment or any procedure for review— suffices. In any event, these family members do not possess the "authority to make all decisions on behalf of individuals with developmental disabilities." Thus, despite the valuable contributions of these actively involved family members, they do not meet the definition of "other legal representative[s]" under federal law. Accordingly, if an individual who is unable to consent has an actively involved family member but not a legal guardian, conservator or other legal representative as defined by the federal regulations, petitioners are entitled to access to

that individual's clinical or medical records under Mental Hygiene Law § 33.13 (c) (4), without having to obtain consent from the actively involved family members, if a complaint has been received or if petitioners have probable cause to suspect abuse or neglect of that individual.[3]

Although petitioners requested declaratory relief in the petition/complaint, they did not specify what declarations they seek. Without a clarification of their request, we are unable to grant any declaration.

PETERS, J.P., SPAIN and EGAN JR., JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied petitioners access to (1) records under Mental Hygiene Law § 33.13 (c) (4) of developmentally disabled individuals who are unable to consent and have actively involved family members who are not a legal guardian, conservator or other legal representative as defined by federal regulations and (2) records under Mental Hygiene Law § 45.09 (b), and, as so modified, affirmed.

---

3. While respondents and amicus express concern for the privacy rights of patient records, the statutes at issue require petitioners to protect the confidentiality and limit any redisclosure of those records (*see* Mental Hygiene Law § 33.13 [f]; § 45.09 [b]).