Matter of Mental Hygiene Legal Serv. v Delaney (2019 NY Slip Op 06119)





Matter of Mental Hygiene Legal Serv. v Delaney


2019 NY Slip Op 06119


Decided on August 8, 2019


Appellate Division, Third Department


Garry, P.J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 8, 2019

527772

[*1]In the Matter of MENTAL HYGIENE LEGAL SERVICE, on Behalf of OLIVIA CC., an Infant, Appellant,
v
KERRY DELANEY, as Acting Commissioner of the Office for People with Developmental Disabilities, et al., Respondents, et al., Respondent.

Calendar Date: June 3, 2019

Before: Garry, P.J., Lynch, Clark, Devine and Aarons, JJ.


Sheila E. Shea, Mental Hygiene Legal Service, Albany (Shannon Stockwell of counsel), for appellant.
Letitia James, Attorney General, Albany (Laura Etlinger of counsel), for Kerry Delaney and another, respondents.
Stafford, Owens, Piller, Murnane, Kelleher & Trombley, PLLC, Plattsburgh (Brendan P. Owens of counsel), for Champlain Valley Physicians Hospital, respondent.



OPINION AND ORDER
Garry, P.J.
Appeal from a judgment of the Supreme Court (Powers, J.), entered May 18, 2018 in Clinton County, which dismissed petitioner's application, in a combined proceeding pursuant to CPLR articles 70 and 78 and action for declaratory judgment, to, among other things, challenge the placement of Olivia CC. at respondent Champlain Valley Physicians Hospital and the services provided by the Office for People with Developmental Disabilities and the Department of Health.
In 2018, Olivia CC. (hereinafter the child), a minor with complex developmental disabilities, was stranded in the emergency room of respondent Champlain Valley Physicians Hospital (hereinafter CVPH) for more than five weeks while she waited for a residential school placement. The child was not in need of medical or psychiatric care. However, neither her family nor the Office for People with Developmental Disabilities (hereinafter OPWDD) — the agency legislatively charged with protecting the welfare of persons with developmental disabilities — could provide her with safe interim housing. CVPH thus retained the child in the emergency room, where she could not attend school, participate in community activities or go outdoors, and CVPH was forced to use scarce medical resources to provide for her nonmedical [*2]needs. Unfortunately, the child is not the first minor with special needs to be marooned for weeks or months in an emergency room, as hospitals find themselves serving as the last resort for providing shelter to children in crisis [FN1]. The difficult legal issues presented here call into question the extent of the responsibilities of the legislative and administrative functions of government to some of our society's most vulnerable members, and the limitations on the power of courts to protect them.
The child's diagnoses include an intellectual disability, mood dysregulation disorder, intermittent explosive disorder, attention deficit disorder and a chromosomal syndrome. Before the child was brought to CVPH, she lived with her family in Clinton County. In 2013, OPWDD deemed her to be eligible for services to avoid institutionalization, including community habilitation and respite services under OPWDD's Home and Community Based Services (hereinafter HCBS) Medicaid waiver program [FN2]. These services were administered through OPWDD's Self-Direction program, by which Medicaid funds were provided to pay for services delivered in the child's home, and the child's mother was responsible for hiring and supervising providers.
In April 2018, while the child was attending school in the Plattsburgh City School District (hereinafter the school district), she exhibited behaviors that could not be managed at school. The child, then 16 years old, was transported to the emergency room at CVPH. Upon determining that the child did not require medical or inpatient psychiatric care, CVPH sought to discharge her to her mother. Stating her concern for the safety of a sibling, however, the mother refused to accept the child's discharge back to her home without further assistance. CVPH made a report of child abandonment to the Clinton County Department of Social Services, but said Department supported the mother's decision and declined to commence abandonment or neglect proceedings. The school district determined that the child required placement in a residential school and searched for an appropriate facility, canvassing at least 27 schools, but none was immediately able to accept the child. OPWDD sought an interim placement by sending referrals to OPWDD regional offices and voluntary agencies throughout the state and, when these efforts were unsuccessful, increased the child's HCBS funding to provide additional assistance in her home. However, no qualified private providers were available. The mother reportedly asked OPWDD to make its own employees available to assist her, but OPWDD declined.
Fifteen days after the child entered CVPH, petitioner commenced this combined proceeding pursuant to CPLR articles 70 and 78 and action for declaratory and injunctive relief on the child's behalf against respondents Commissioner of Health and the Acting Commissioner of OPWDD (hereinafter collectively referred to as respondents). The petition/complaint also named CVPH as the entity holding the child in its custody (see CPLR 7002 [c] [1]; 7004 [b]). The petition/complaint sought habeas corpus relief, asserted that the failure of the Department of Health (hereinafter DOH) and OPWDD to deliver services to the child was arbitrary, capricious and contrary to law pursuant to CPLR article 78, and alleged regulatory and statutory violations. Respondents joined issue by filing an answer and return. CVPH submitted a memorandum of law in support of the petition/complaint and petitioner filed a reply.
In May 2018, Supreme Court issued a decision finding that the statutory obligation to place minors in residential schools rested exclusively upon school districts, that OPWDD had no [*3]authority to place children outside of their homes,[FN3] that OPWDD had not denied services to the child, that OPWDD's service model did not permit it to make its own employees available to provide direct services and, thus, that petitioner's statutory claims lacked merit. The court initially declined to dismiss the petition/complaint and, instead, issued a conditional order that, among other things, directed petitioner to file an amended petition naming the school district as an additional respondent [FN4]. All parties were ordered to appear for a conference 10 days later, with the court further directing that, if the child was then still at CVPH, she would be discharged to the mother, and, if a placement had been found, the claims against respondents would be dismissed.
At the conference, Supreme Court was informed that the child had been discharged to a residential school for a trial placement on the previous day. Petitioner declined an offer by the court to adjourn the conference until it was determined whether this placement would become permanent. The court then issued a final judgment that incorporated the conditional order by reference and dismissed the amended petition/complaint. Petitioner appeals.[FN5]
We decline respondents' request to dismiss this matter as moot [FN6]. "As a general principle, courts are precluded 'from considering questions which, although once live, have become moot by passage of time or change in circumstances'" (City of New York v Maul, 14 NY3d 499, 507 [2010], quoting Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714 [1980]). As the child has been released, "the parties' rights and interests can no longer be affected by [our] determination" (Matter of Stephen K. v Sara J., 170 AD3d 1466, 1467 [2019]). Nevertheless, "[a]n exception to the mootness doctrine exists permitting courts to preserve for review important and recurring issues which, by virtue of their relatively brief existence, would be rendered otherwise nonreviewable" (Matter of William C., 64 AD3d 277, 282 [2009]; see Matter of Hearst Corp. v Clyne, 50 NY2d at 714-715). The record reveals that temporary residential placements for children with complex disabilities are scarce. As the process of finding appropriate permanent placements necessarily takes time, the problem of the unavailability of interim placements is likely to recur, and, because long-term placements will usually be found before appeals can be perfected, the issue will typically evade appellate review. The matter indisputably "implicates significant and novel questions of statewide importance involving the rights of [developmentally disabled minors]" (Matter of William C., 64 AD3d at 283). Thus, the exception to the mootness doctrine applies (see Matter of Gonzalez v Annucci, 32 NY3d 461, 470-471 [2018]; Coleman v Daines, 19 NY3d 1087, 1090 [2012]; Matter of Nile W., 64 AD3d 717, 719 [2009]).
Supreme Court did not err in directing petitioner to join the school district as a respondent. The court was authorized to determine sua sponte that a necessary party had not been joined (see Matter of Lezette v Board of Educ., Hudson City School Dist., 35 NY2d 272, 282 [1974]). Petitioner was not required to exhaust administrative remedies, as the school district had not taken any action that could have been administratively challenged (compare Cave v East Meadow Union Free School Dist., 514 F3d 240, 248 [2d Cir 2008]). The school district was authorized to place the child and was actively seeking a placement; thus, its joinder was [*4]appropriate "if complete relief [was] to be afforded [among] the persons who [were] parties to the [proceeding]" (CPLR 1001 [a]; see CPLR 1001 [b]; Education Law § 4401 [2] [j]; 8 NYCRR 200.2 [b]; Matter of Northeast Cent. School Dist. v Sobol, 170 AD2d 80, 83 [1991], mod 79 NY2d 598 [1992]).
As for petitioner's substantive contentions, we turn first to the claim that relief should have been afforded to the child in equity. CVPH made a compelling argument in Supreme Court that the child's constitutional liberty interests were being violated and that the court should exercise its equitable powers to devise a procedure for notice and a hearing in which dispositional alternatives could be promptly examined (see US Const Amend XIV, § 1; NY Const, art 1, § 1; compare Rivers v Katz, 67 NY2d 485, 497 [1986]). Supreme Court is constitutionally vested with jurisdiction in equity, and "the essence of [such] jurisdiction has been the power . . . to mould each decree to the necessities of the particular case" (State of New York v Barone, 74 NY2d 332, 336 [1989] [internal quotation marks, brackets, ellipsis and citations omitted]; see NY Const, art VI, § 7 [a]; Dickerson v Thompson, 88 AD3d 121, 123 [2011]). However, CVPH filed no pleadings, making its request solely in a memorandum of law. Petitioner made no assertion in its amended petition/complaint that the child's due process rights had been violated, did not request equitable relief in the nature of notice and a hearing and did not seek an amendment to add such assertions (see Matter of Tomarken v State of New York, 100 AD3d 1072, 1076 [2012]; Matter of Association for Community Living, Inc. v New York State Off. of Mental Health, 92 AD3d 1066, 1068 [2012], lv dismissed 19 NY3d 874 [2012])[FN7]. Thus, the issue was not developed or addressed. When equity jurisdiction is exercised, "the limitations on the variety, flexibility and sweep of its potential application must be reflected in a proportionate, prudential discretion by the initial equity trial court and then by a discerning scrutiny, especially of the intermediate appellate court possessing coordinate authority in that respect, along with its appellate review power" (State of New York v Barone, 74 NY2d at 336). No such analysis is possible here, and no newly-devised procedure would now be of benefit to the child. We therefore decline to address the merits of this request upon this record.
Turning to petitioner's statutory claims,[FN8] the third cause of action asserts that OPWDD violated its duty to protect the child's personal and civil rights by failing to provide her with needed services (see Mental Hygiene Law § 13.07 [c]). The fourth cause of action claims that OPWDD and DOH refused to deliver Medicaid-funded HCBS services and that this failure was arbitrary, capricious and contrary to law [FN9]. Contrary to petitioner's assertion, these claims do not sound in the nature of mandamus to review, in which "a court examines an administrative action involving the exercise of discretion" (Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. [*5]Educ. Servs., 77 NY2d 753, 757 [1991]; see CPLR 7803 [3]). Petitioner does not challenge any administrative determination by OPWDD, but instead challenges its alleged omissions to act [FN10]. As such, mandamus to compel is petitioner's "sole available remedy" (New York Civ. Liberties Union v State of New York, 4 NY3d 175, 183-184 [2005]).
We are constrained to agree with respondents that mandamus does not lie to permit a judicial determination that OPWDD was required to provide any specific service to enable the child's release. "Mandamus to compel is 'an extraordinary remedy that lies only to compel the performance of acts which are mandatory, not discretionary, and only when there is a clear legal right to the relief sought'" (Matter of Curry v New York State Educ. Dept., 163 AD3d 1327, 1330 [2018], quoting Matter of Shaw v King, 123 AD3d 1317, 1318-1319 [2014]; see Matter of Mental Hygiene Legal Serv. v Daniels, 33 NY3d 44, 66 [2019]). In keeping with the state's public policies favoring the deinstitutionalization of persons with disabilities, OPWDD does not operate residential facilities for developmentally disabled children under the age of 21, as it does for adults. Instead, OPWDD's service model for minors is based upon cooperation with school districts and other public and private agencies. OPWDD works with other agencies to provide community-based services to developmentally disabled children in their homes. As for children who cannot reside at home, OPWDD issues operating certificates to private agencies that operate residential programs, primarily consisting of residential schools, as well as some group homes and other facilities. Under this model, OPWDD cannot compel these private agencies to provide services to any particular child. Petitioner argues that, by making these decisions, OPWDD has effectively created an unfilled gap in service delivery for developmentally disabled children who need temporary housing and that its resource allocation decisions amount to an election not to provide services to such children that is inconsistent with its statutory responsibilities.
The Mental Hygiene Law makes OPWDD responsible for providing services to persons with developmental disabilities and for protecting their personal and civil rights (see Mental Hygiene Law § 13.07 [a], [c]). OPWDD's commissioner is obliged to establish OPWDD's policies and procedures, to plan and conduct a broad range of services and to "take all actions that are necessary, desirable or proper to implement the [statutory] purposes " (Mental Hygiene Law § 13.15 [a]; see Mental Hygiene Law § 13.17 [a]). The commissioner is empowered to determine the "functions, duties and responsibilities" of OPWDD's "units and facilities" and to "continue, establish, discontinue, expand and contract facilities under his or her jurisdiction" (Mental Hygiene Law § 13.11 [b]). OPWDD is thus vested with broad discretion in developing and operating programs and services and in allocating its resources (see Matter of Savastano v Prevost, 66 NY2d 47, 50 [1985]; Matter of Ronald W., 25 AD3d 4, 11-12 [2005]).
Notably, OPWDD did not fail to provide the child with any services (see Matter of Savastano v Prevost, 66 NY2d at 49-50). In addition to searching for a more appropriate placement, OPWDD increased funding for the child's HCBS services to a level that apparently would have permitted the child to return home if a qualified provider could have been found. The discretion and flexibility embodied in the governing provisions of the Mental Hygiene Law preclude a finding that the child had a "clear legal right" (Matter of Shaw v King, 123 AD3d at 1318-1319) to a more appropriate placement or to any other specific service. OPWDD's actions and policy choices "involve the exercise of reasoned judgment which could typically produce different acceptable results" and, as such, are beyond the reach of judicial intervention (Alliance to End Chickens as Kaporos v New York City Police Dept., 32 NY3d 1091, 1093 [2018] [internal quotation marks and citations omitted], cert denied ___ US ___, 139 S Ct 2651 [2019]; see Matter of Albany Police Officers Union, Local 2841, Law Enforcement Officers Union Dist. Council 82, AFSCME, AFL-CIO v New York Pub. Empl. Relations Bd., 170 AD3d 1312, 1313-1314 [2019]). Accordingly, we cannot address petitioner's contentions, as this Court does not [*6]have the power to intervene in OPWDD's discretionary determinations. We thus find that the third and fourth causes of action were properly dismissed.[FN11]
Petitioner next contends that DOH, which administers this state's Medicaid program, violated the federal Medicaid Act by failing to act "with reasonable promptness" in furnishing the child with HCBS services that would have allowed her to return home (42 USC § 1396a [a] [8]). The Medicaid Act sets forth over 80 provisions that must be included in state Medicaid plans, including a requirement "that [medical] assistance shall be furnished with reasonable promptness to all eligible individuals" (42 USC § 1396a [a] [8]). We find that this provision does not give rise to a private right of action by which petitioner may seek relief on the child's behalf.
As petitioner notes, some federal courts have previously found that the reasonable promptness provision of the Medicaid Act creates a statutory right that may be enforced pursuant to 42 USC § 1983 (see e.g. Doe v Chiles, 136 F3d 709, 718 [11th Cir 1998]; Reynolds v Giuliani, 35 F Supp 2d 331, 341 [SD NY 1999]; Alexander A. v Novello, 210 FRD 27, 34-37 [ED NY 2002]; see generally Wilder v Va Hosp Assn., 496 US 498, 509 [1990]).[FN12] However, the Supreme Court of the United States later established a more rigorous analysis, holding that nothing "short of an unambiguously conferred statutory right . . . support[s] a private cause of action under 42 USC § 1983" (Gonzaga Univ. v Doe, 536 US 273, 283 [2002]; accord Doe v Gillespie, 867 F3d 1034, 1053 [8th Cir 2017]). Thereafter, in Armstrong v Exceptional Child Ctr., Inc. (___ US ___, ___, 135 S Ct 1378, 1387-1388 [2015]), the Court analyzed 42 USC § 1396a (a) and held that no private right of action existed by which a Medicaid provider could enforce one of the other provisions that, like the reasonable promptness requirement, must be included in state Medicaid plans (see 42 USC § 1396a [a] [30] [A]). As pertinent to the arguments raised here, the Court noted that no such right could be asserted pursuant to 42 USC § 1983 (Armstrong v Exceptional Child Ctr., Inc., 135 S Ct at 1386 n), and further found that no private right of action could be implied from the statutory language itself (id. at 1387-1388).
Although Armstrong did not address the reasonable promptness provision, its reasoning leads this Court to the same conclusion. As in Armstrong, the reasonable promptness requirement "is phrased as a directive to the federal agency charged with approving state Medicaid plans, not as a conferral of the right to sue upon the beneficiaries of the [s]tate's decision to participate in Medicaid" (id. at 1387), and such statutory language does not "unambiguously confer[]" a private right of action under federal law (id. at 1388 [internal quotation marks and citation omitted]). Further, as in Armstrong, the Medicaid Act provides for the enforcement of 42 USC § 1396a (a) by withholding Medicaid funding, thus "suggest[ing] that other means of enforcement are precluded" (id. at 1387; see 42 USC § 1396c). Accordingly, the Medicaid Act does not provide an avenue for petitioner's challenge.
Petitioner's remaining two causes of action allege that OPWDD and DOH violated the Americans with Disabilities Act (hereinafter ADA). In the sixth cause of action, petitioner asserts that the child's isolation in the emergency room violated the ADA's "integration mandate" requiring states to provide services to persons with disabilities "in the most integrated setting appropriate to their needs" (Disability Advocates, Inc. v Paterson, 598 F Supp 2d 289, 317 [ED NY 2009] [internal quotation marks omitted]; see 28 CFR 35.130 [d]). However, the mandate does not require the provision of services unless, in addition to criteria not at issue here, "the placement can be reasonably accommodated, taking into account the resources available to the [*7][s]tate and the needs of others with [similar] disabilities" (Olmstead v L.C. by Zimring, 527 US 581, 607 [1999]). Moreover, the mandate does not require a state to modify its services when the modifications "would fundamentally alter [their] nature" (28 CFR 35.130 [b] [7]; see Radaszewski ex rel Radaszewski v Maram, 383 F3d 599, 611 [7th Cir 2003]), and it may not be used to compel the creation of new programs (see Rodriguez v City of New York, 197 F3d 611, 618 [2d Cir 1999]). Thus, petitioner's contentions that OPWDD should operate its own residential programs or develop a service model by which its employees can provide direct services do not establish violations of the integration mandate. Likewise, the absence of private providers to deliver expanded HCBS services in the child's community does not establish a violation, as the state may not be held liable for the actions of private agencies delivering state services when, as here, there is no claim that the agencies engaged in discrimination resulting from the state's policies (see Woods v Tompkins Cty., 2019 WL 1409979, *10, 2019 US Dist LEXIS 52674, *28-29 [ND NY, Mar. 28, 2019, No. 5:16-CV-0007 (LEK/TWD)]; 28 CFR 35.130 [b] [6]).
In the seventh cause of action, petitioner asserts that OPWDD and DOH violated prohibitions in the ADA's implementing regulations against administering programs in a manner that subjects individuals with disabilities to discrimination or undermines the goals and purposes of the ADA (see 28 CFR 35.130 [b] [3]). Petitioner asserts that the methods of administration used by OPWDD and DOH subject developmentally disabled children in crisis to discrimination consisting of isolation in emergency rooms. However, the cases upon which petitioner relies involve allegations of improper implementation of Medicaid waiver programs that resulted in delays or denials of services and thus placed beneficiaries at risk of institutionalization (see Guttenberger v Minnesota, 198 F Supp 3d 973, 1012-1013 [D Minn 2016]; Parrales v Dudek, 2015 WL 13373978, *2, 2015 US Dist LEXIS 189205, *5 [ND Fla, Dec. 24, 2015, No. 4:15cv424-RH/CAS]). Here, the facts do not reveal improper administration of Medicaid waiver services. Instead, the absence of services resulted from OPWDD's discretionary policy decisions and from a lack of local private providers, which petitioner does not allege was caused by discrimination. The sixth and seventh causes of action thus afford no grounds for relief.
Our conclusion that the amended petition/complaint provides this Court with no grounds to intervene in respondents' operations should not be misunderstood as condonation of the child's prolonged and unnecessary hospitalization or of respondents' failure to provide her with appropriate assistance. Nevertheless, this record does not permit a determination of the propriety of constitutional or equitable relief, and relief grounded in the statutory provisions relied upon here must come from the Legislature or from respondents' policy choices. Thus, we will not disturb Supreme Court's judgment.
Lynch, Clark, Devine and Aarons, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: CVPH asserts that the lack of adequate services for children with complex diagnoses has created a "new de facto type of legal confinement." Supreme Court observed, "It is a stark reality that our state's most vulnerable children alarmingly spend multiple months (or longer) housed in hospital emergency rooms, notwithstanding the absence of any on-going medical need, nor abuse/neglect within the home setting nor the immense efforts of family members attempting to orchestrate a better life plan for their loved ones."

Footnote 2: Respite services provide temporary, intermittent care of a person with a developmental disability as relief for the home caregiver. Community habilitation services provide socialization and adaptive skills.

Footnote 3: OPWDD advised this Court that, although Supreme Court was correct that school districts are the only entity with authority to place children in residential schools, OPWDD does have authority to place children in certain other residential facilities when appropriate.

Footnote 4: Petitioner filed an amended petition that named the Superintendent of the school district as an additional respondent. The Superintendent did not file a brief or otherwise participate in the appeal.

Footnote 5: Although CVPH did not file a notice of appeal, it filed a brief opposing the dismissal of the amended petition/
complaint.

Footnote 6: Counsel advised this Court that the child's placement in the residential educational facility became permanent after the expiration of the initial trial period.

Footnote 7: The statement of facts in the amended petition/complaint asserts generally that the child's "statutory and constitutional rights" were violated, but the causes of action are based solely upon statutory and regulatory violations and seek only declaratory and injunctive relief. It is further unclear whether the parties intended, in the use of this broad language, to assert any claims under the New York Constitution.

Footnote 8: Petitioner is no longer pursuing the first two causes of action, seeking a writ of habeas corpus and alleging violations of certain discharge regulations.

Footnote 9: As a preliminary matter, the parties have framed their arguments in terms of whether the amended petition/complaint states claims upon which relief can be granted. Although respondents' answer and return made a general request for dismissal, the record does not reveal that respondents filed a motion to dismiss, and the answer and return neither included objections in point of law nor asserted that the amended petition/complaint failed to state a claim (see CPLR 7804 [f]). Supreme Court's dismissal was predicated upon its prior rulings, which addressed the substance of petitioners' claims rather than the facial sufficiency of the allegations. The issues presented upon this appeal involve pure questions of law, and we thus address the merits of petitioner's remaining claims and do not apply the standard for a motion to dismiss for failure to state a claim (compare Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 81 AD3d 145, 148 [2011], mod 19 NY3d 106 [2012]).

Footnote 10: Although petitioner included DOH as well as OPWDD in the fourth cause of action, its substantive allegations focus solely upon OPWDD.

Footnote 11: OPWDD represents that it is establishing two new programs that could have assisted the child if they had been in effect then, and that these programs will help other children in comparable circumstances. These include NYSTART, which offers comprehensive resources to families of developmentally disabled children in crisis, and a transitional residential program that OPWDD has cofounded with the Office of Mental Health.

Footnote 12: We note that the amended petition/complaint makes no express claim pursuant to 42 USC § 1983, but merely asserts that petitioner seeks to enforce the reasonable promptness provision "through a private right of action."